JOHN H. ASHTON et al., Appellants, *v.* THE CITY OF ROCHESTER et al., Respondents.

Where a judgment is rendered against a municipality, in its corporate name, or against a board of officers who represent the municipality, in the absence of fraud or collusion it will bind the citizens and taxpayers.

Where a writ of mandamus is awarded by a competent court against a board of officers of a municipality, having power to let contracts for works of local improvement, requiring them to let such a contract, and it is let in obedience to such command and a local assessment duly made to defray the expenses, the power of the board to let the contract may not be questioned subsequently by the taxpayers in a collateral proceeding.

*It seems* their remedy is to appeal from the judgment awarding the writ or to move for a rehearing.

In pursuance of the charter of the city of Rochester of 1880 (Chap. 14, Laws of 1880), its common council, after due publication of notice to those liable to be assessed, of a hearing, and after such hearing, adopted an ordinance authorizing the repaving of one of its streets, and determining the manner and cost thereof and the assessment district. A copy of this ordinance was sent to the ".executive board" which, by the charter is the body authorized to let contracts for such work and to supervise the execution thereof. Thereafter resolutions were passed by the common council reconsidering the ordinance and indefinitely postponing further action thereon. The executive board, after receipt of the copy of said ordinance, advertised for and received bids for the work, but postponed action, and after passage of the said resolutions by the common council. laid the matter on the table. A peremptory writ of mandamus was thereafter granted by the Supreme Court, after a full hearing and against the contention of the board that they had lost authority by the reconsideration, on application of certain of the property owners within the assessment district, requiring said board to award the contract, which it did. A contract was entered into in accordance with the ordinance and the cost was assessed in conformity with the charter and the contract was performed. In an action by persons whose property was assessed and who were not personally parties to the mandamus proceedings, to restrain the collection of the assessment on the ground that the ordinance authorizing the improvement was by the reconsideration rendered ineffectual, *held*, that plaintiffs were estopped by the judgment in said proceedings, that it was in effect an adjudication; that the ordinance was in full force, notwithstanding the reconsideration.

*It seems* that said adjudication was error.

Reported below, 60 Hun, 372.

(Argued March 25, 1892; decided April 19, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 31, 1891, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George T. Parker* and *John Van Voorhis* for appellants. When the executive board let the contract for the improvement of Lake avenue there was no existing resolution of the common council authorizing it. Said board had no power to let the contract, and the assessment herein should be set aside. (*Striker* v. *Kelly*, 7 Hill, 9, 24; *Doughty* v. *Hill*, 3 Den. 249; *Whitney* v. *Village of Hudson*, 69 Mich. 189; *State* v. *Foster*, 2 Hals. 101; *McGraw* v. *Whitson*, 69 Iowa, 348; *City of Lowell* v. *Hadley*, 8 Metc. 189; *Withington* v. *Harvard*, 8 Cush. 66; Laws of 1880, chap. 14, § 48; *Randall* v. *Smith*, 1 Den. 214; *Bigelow* v. *Hillman*, 37 Me. 52; *People* v. *Bd. Suprs.*, 65 N. Y. 222; *Reed* v. *City of Augusta*, 25 Ga. 386; *Stoddard* v. *Gilman*, 22 Vt. 568; *Enslay* v. *Starr*, 56 id. 690; *Jersey City* v. *State*, 30 Vroom. 520; 1 Dillon on Mun. Corp. 360, § 544; *Blanchard* v. *Bissell*, 11 Ohio St. 96.)

*Henry J. Sullivan* for respondent. The executive board had the power to advertise for and let the contract for the improvement of Lake avenue in question, and to superintend the execution of the contract, and the assessment made for the cost thereof, sought to be set aside herein, was and is a valid assessment. (*Goff* v. *Newland*, 62 How. Pr. 323; 1 Dillon on Mun. Corp. [3d ed.] §§ 309, 321; *Whitney* v. *Village of Hudson*, 69 Mich. 189; *Stockdale* v. *Wayland*, 47 id. 226; *White* v. *City of Buffalo*, 61 Barb. 415; *Kavanagh* v. *City of Brooklyn*, 38 id. 232.) This action being one on the equitable side of the court, the plaintiffs were rightly defeated, because there is no equity in their case. (*In re Pinckney*, 22 Hun, 474; 84 N. Y. 645; *In re M. L. Ins. Co.*, 89 id. 530.)

O'BRIEN, J.  The plaintiffs sought to enjoin the collection of a local assessment, alleged to be apparently valid but in fact void, imposed by the municipal authorities of the city of Rochester, to defray the cost of a local improvement.  The record shows that the plaintiffs are respectively the owners of parcels of real estate situate on Lake avenue, between Vincent Place and Lyel avenue and Driving Park avenue, which have been assessed for the improvement.  They brought this action in their own behalf, and in behalf of all other persons having property fronting on the street and assessed for the improvement, for the purpose of obtaining a judgment declaring the assessment null and void, and enjoining the city treasurer, who is also made a defendant, from issuing his warrant for the collection thereof.  The courts below have determined the controversy against the plaintiffs' contention, and the only question here is whether there is any legal error in that determination.  The question is really one of jurisdiction in the authorities to make the assessment.  Under the charter of that city (Laws 1880, ch. 14) the common council has power to order the paving and improvement of any street and to pass the necessary ordinances requiring the same to be done, and to determine the manner and cost of such paving, and to designate the portion of the city which should bear the expense thereof.  The work when authorized and determined upon is to be performed by contract, but the power of contracting for the execution of the work is, by the charter, devolved upon another separate and independent body, called the executive board.  The power of this board to let and supervise the execution of the contract commences only after the common council has authorized the work and designated the district upon which the assessment is to be laid.

When the common council has authorized the particular improvement and described the district upon which the assessment is to be imposed, and ascertained the expense thereof, then the assessors of the city are to levy the amount upon the several lots and parcels of real estate in the designated territory, in proportion, as near as may be, to the benefit which

such lot or parcel shall be deemed by them to have received by reason of the improvement, subject to the correction and confirmation of the common council. The assessment, when completed and confirmed, becomes a lien upon the several lots designated in the roll and the same is delivered to the city treasurer, whose duty it is to collect the same. On the 11th of December, 1888, the common council duly adopted a resolution providing for paving the streets and avenues above mentioned with asphalt pavement and therein directed the clerk to publish notice in accordance with the provisions of the charter for all persons directed to be assessed, to appear at a meeting of the common council December 26, 1888, at which time all persons interested could be heard. At this meeting, after hearing all parties interested, the common council adopted the final resolution for the improvement, in which the work is particularly specified, and the whole expense thereof directed to be assessed upon the property therein described. There is no criticism made upon the form or sufficiency of the resolution or the regularity of any of the proceedings up to this point. The resolution, however, did not become operative, for the reason that it was vetoed by the mayor, till January 8, 1889, when it was again unanimously adopted, notwithstanding such veto.

By reference to title 7 of the charter, it will be seen that the executive board is clothed with very extensive powers and intrusted with very important duties. The members are elected by the people, are required to devote their entire time to the business of the city, and are compensated by a fixed salary. They have the control of the expenditure of. the funds for street purposes, and they are expressly made commissioners of highways of the city. The board can appoint and remove at pleasure the superintendent of streets, and fix his compensation. It is plain from reading the enumeration of the various powers conferred upon the board by the charter, that the legislature intended to strip the common council of Rochester of most of the ordinary functions and powers that such a body exercises in other cities, and transfer them to this

executive board. The common council has very little to do with respect to the care, improvement and superintendence of the streets. The most important exception to this is the provision that whenever the expenses of any work or improvement shall be required to be paid for by a local assessment, the common council alone shall have power to pass the ordinance therefor.

But when the common council has passed such an ordinance, then the judgment and discretion, with respect to such an improvement, which the charter has confided to the board for the public good, is at once called into action. The question as to the necessity and propriety of improving a street by local assessment must be passed upon by the common council in the first instance, but when that body makes its decision, another body, entrusted by law with the general subject of street expenditures and improvements, must carry it out, and the latter body is thereby vested with jurisdiction on the subject.

On the 19th of March, 1889, and more than a month after the resolution was passed and sent to the executive board, a motion was made and adopted in the common council, " that action on the final ordinance for Lake avenue  *  *  *  be reconsidered," and at a subsequent meeting, on March 28, 1889, another resolution was passed " that further action on the pending final ordinance for Lake avenue asphalt improvement be indefinitely postponed," and that the surveyor be ordered to prepare a new first ordinance for the improvement. The plaintiffs claim that this motion and resolution had the effect to withdraw from the board all authority conferred by the original resolution. The executive board, after receiving the copy of the first resolution, proceeded to act, and advertised for bids and received the same, and on March 12, 1889, postponed action thereon from time to time until March 29, 1889, when it laid the matter on the table. On the 25th of April, 1889, the board was served with a peremptory writ of mandamus from the Supreme Court, granted after a full hearing, requiring them to award the contract, and to show to the court, on a day subsequently, in what manner the writ was obeyed.

On the twenty-ninth of April, the board entered into a written contract for the work, in accordance with the first ordinance. The contract was performed, and on the 18th of October, 1889, the board certified the cost to the common council, in conformity with the charter, and that body then directed the assessors to assess the amount upon the parcels of land described in the original resolution. The assessors made the assessment and published notice of a hearing for all persons aggrieved, and after such hearing, certified the roll and delivered it to the common council. That body also published notice for a hearing before them, and, after such hearing, confirmed the assessment and caused the roll to be delivered to the city treasurer for collection. The resolution of the common council confirming the assessment was passed some time after June 6, 1890.

The plaintiff's claim for relief is based upon the fact that the common council reconsidered and subsequently postponed indefinitely the resolution authorizing the improvement, and that, consequently, all subsequent proceedings were invalid. If the question as to the legal effect of the action of the common council in resolving to reconsider its former action was still open to the plaintiffs, we would be inclined to hold that the resolution was, by the adoption of the motion to reconsider, brought back to the stage in which it was before the final vote by which it was originally passed. The vote on the resolution was reconsidered, and consequently the effect which it would otherwise have was lost. (Jefferson's Manual, § 43 ; Roberts' Rules of Orders, p. 66 )

The record shows that upon the application of certain of the property owners on the street, other than the plaintiffs, liable to be assessed for the improvement, the Supreme Court at Special Term awarded a mandamus against the executive board, commanding it to proceed upon the resolution and to award a contract for the performance of the work. That, acting in obedience to this command, the board did award the contract in accordance with the provisions of the charter prescribing the powers and duties of the board. The decision upon the

application for the mandamus was a judgment of a court of competent jurisdiction.   It adjudged that the resolution of the common council was in full force, notwithstanding the motion to reconsider, and that it was the clear legal duty of the executive board to proceed and let the contract.   This judgment could not thereafter be questioned collaterally by any of the parties, nor anyone else who was represented in the proceeding.   They might attack it directly by appeal or motion to set aside, or for a rehearing, but so long as it remained unreversed and not set aside, it bound everyone who was a party, or represented in any subsequent collateral action or proceeding.   It is quite clear that it bound the property owners who applied for the writ, the executive board and the city.   The only question is whether it bound these plaintiffs who were not parties by name.   But the judgment of a court of competent jurisdiction will sometimes operate as an estoppel and a former adjudication against persons who were not named in the proceeding and who were not parties to the record by name.   It is enough if they were represented in the action or proceeding which resulted in the judgment, or were entitled to be heard.   When a judgment is rendered against a county, city or town in its corporate name, or against a board or officer who represents the municipality, in the absence of fraud or collusion, it will bind the citizens and taxpayers.   This is upon the principle that they are represented in the litigation by agencies, authorized to speak for them, and to protect their interests. (Herman on Estoppel, vol. 1, p. 166 ; *Clark* v. *Wolf*, 29 Iowa, 197 ; *Lyman* v. *Faris*, 53 id. 498 ; *Tredway* v. *Soux City & P. R. Co.*, 39 id. 663 ; Freeman on Judgments, § 178 ; *Robbins* v. *Chicago*, 4 Wall. 657 ; *S. C.*, 2 Black. 418 ; *Preble* v. *Supervisors*, 8 Biss. 358.)

When a judgment is rendered by a competent court awarding a writ of mandamus against a board of supervisors or other body or officer having power to audit claims against a county or other municipality, commanding them or him to audit a claim or demand against the county or municipality, and it is audited in obedience to such command, the validity of the

claim cannot be questioned subsequently by the taxpayers in any collateral action or proceeding. Their remedy is to appeal from the judgment awarding the writ or move for a rehearing. So also a receiver of a corporation, appointed in an action by the people for dissolution, represents the creditors, and a judgment that would estop him estops them also. (*Herring* v. *N. Y., L. E. & W. R. R. Co.*, 105 N. Y. 340.)

We are not aware of any reason for holding that the principle does not apply to the plaintiffs in this case. True this is not a general tax but a special and local assessment. But it is nevertheless an exercise of the taxing power and its validity as well as the right of the plaintiffs to question or assail it in the courts rests on the same principles as are applicable to an assessment or tax for general purposes. If the expense of the improvement was to be paid out of the city treasury there would then be little doubt that an adjudication upon an application for a mandamus, involving as this did the validity of the proceedings up to that time, would have bound all the tax payers. Is the rule any different when a small part or even the whole of the expense is to be paid by the property owners within a certain district? Is the principle changed because the area over which the tax was distributed is contracted? The executive board laid the matter on the table and, in effect, refused to act, treating the resolution as rescinded by the common council. They were brought into court and the very question involved was whether the board had authority to contract for the execution of the work, and the court held, upon full argument and against the contention of the board, that they had. The question was whether they had power under the proceedings to make a contract and incur an expense which was to be paid by the property owners, and it was adjudged that they had, and that it was their duty to do so. When the executive board was before the court on that application they represented and spoke, not only for themselves and the city, but also the property owners who were to be bound by the contract, and whose property was to be assessed for the expenditure which the work embraced in the contract

involved.    When the court directed the board to make the contract the effect of its judgment was to direct the imposition of a tax upon the plaintiffs' property.    On that question the plaintiffs could have been heard, and on their application were entitled to a hearing and to be made parties to the proceeding and to appeal from the decision.    This was a right that no court would have denied to them had they demanded it.    The Code (§ 452) provides that "where a person, not a party to the action, has an interest in the subject thereof or in real property, the title to which may in any manner be affected by the judgment, and makes application to the court to be made a party, it *must* direct him to be brought in by the proper amendment."   (*People* v. *A. & V. R. R. Co.*, 77 N. Y. 232.)

The executive board in making the contract and supervising the work acted, in a certain sense, as the agents of the property owners (*Matter of Anderson*, 109 N. Y. 554), and, therefore, the judgment of the court that the resolution of the common council was still in force, not only bound the agents but the parties they represented as well   There are cases where an order of a court, such as an order of confirmation, is a part of the statutory proceedings for imposing the assessment.    Such an order, when made upon the application of the city, might not be conclusive in all cases upon the property owner as to jurisdiction or the validity of the proceeding, especially where statutory methods of review are provided.    We do not now stop to point out cases where the principle we are now considering would not apply.    All we hold now is that it is applicable to the facts of this case.    Granting that the resolution of the common council to make the improvement was, in effect, rescinded by the motion to reconsider, still a competent court held otherwise, in a proceeding to which the executive board was a party, and that board was compelled by the judgment in that proceeding to make the contract which they did.    The plaintiffs looked on, neglected to intervene in the application for the mandamus, or to appeal from the order granting it.    They knew that the contract was made and the work on the street in front of their property executed and they have the

benefits of the same. They witnessed the proceedings by which the tax was assessed and confirmed, and they made no resistence until the proceedings were completed and the expense incurred. We think that under such circumstances the plaintiffs are estopped from raising the question now, that the executive board was without power to contract for the work by reason of the motion to reconsider the resolution in the common council. The plaintiffs had the statutory notice of all the proceedings under the charter, and the proceedings before the court were of such a public nature and they were so connected with the interests of the plaintiffs that we must assume that they had knowledge of all that transpired. This court has sanctioned the principle stated in *Robbins* v. *Chicago* (71 U. S. 657) that "persons notified of the pendency of a suit in which they are directly interested must exercise reasonable diligence in protecting their interests, and if, instead of doing so, they willfully shut their eyes to the means of knowledge which they know are at hand to enable them to act efficiently, they cannot subsequently be allowed to turn around and evade the consequences which their own conduct and negligence have superinduced." (*Village of Port Jervis* v. *First National Bank*, 96 N. Y. 557.)

In any inquiry with respect to the binding force of a former judgment the term "parties" includes all who are directly interested in the subject-matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment. (*Robbins* v. *Chicago, supra.*)

There is a stipulation in the record by the respective attorneys to the effect that none of the plaintiffs were parties or privies to the proceeding for the mandamus. This, of course, was not intended to bind the court upon any question of law arising upon undisputed facts. Its only effect is to establish a fact, namely, that none of these plaintiffs were parties to that proceeding by name, nor do they stand in the place of any of the property owners who applied for the writ. The legal conclusions to be drawn from the findings and the proceedings

contained in the record were left open.  While we have not been able to concur in the reasons for the decisions given by the courts below, yet we think that the judgment was right and should be affirmed, with costs.

All concur.

Judgment affirmed.

Upon a motion for a reargument the following opinion was handed down :

O'BRIEN, J.  We have considered the points submitted in support of this motion and we are of the opinion that it should be denied.  A former adjudication upon the question at issue is conclusive as a bar or as evidence.  It is said that the proceedings resulting in the writ of mandamus were not pleaded and, therefore, are not available to the defendant.  The fact, however, is found by the trial court, and it was not excepted to.  Under such circumstances effect must be given to the finding.  This court will assume that the evidence upon which the fact was based was received without objection and that the absence of a pleading was waived.  If the finding had been excepted to the plaintiffs could raise the point now that it was not sustained by evidence or pleading, but as no such exception appears, they are in no position to attack it.  (*Daniels* v. *Smith*, 130 N. Y. 696.)  But clearly one of the issues presented by the pleadings was the power of the executive board to pass the resolution and enter into the contract.  A former adjudication in which that point was determined was evidence for the defendant on that issue, and the judgment upon the application for a mandamus was such an adjudication.  (*Culross* v. *Gibbons*, 130 N. Y. 447.)

The common council had no power to make the contract, but the executive board had.  Therefore, in entering into such contracts the board represents the city in the same sense that the mayor and common council would represent it if the duty devolved upon them, and a judgment in an action or proceeding against the board to compel them to act with respect to the awarding of the contract, in which it is decided

that the board has the power and it is their duty to proceed, estops the city. The board, in such matters, represents the city in the same way that the board of supervisors represents the county in auditing claims against it, under the direction of a judgment. It is true that this point was not argued, but the finding necessarily injected it into the case.

Whether the plaintiffs were privies or not depended upon the legal conclusion to be drawn from the finding of the court, and not from any designation given them in the stipulation. That is satisfied when construed to mean that none of these plaintiffs were parties to the record, or stand in the place of any person who was, by succession or transfer.

The motion should be denied, with costs.

All concur.

Motion denied.