WEAVER *et al.* v. CITY OF CHICKASHA *et al.*

No. 2246.  Opinion Filed November 26, 1912.

(128 Pac. 305.)

1. **MUNICIPAL CORPORATIONS** — Public Improvements — Assessments—Complaints and Objections. . Where street improvements have been decided upon under sections 722-733, Comp. Laws 1909, and the work has proceeded under resolutions and proceedings passed in conformity thereto, and the appraisers appointed thereunder have appraised and apportioned the cost of the improvement, and returned and filed their report, and the council has fixed and given notice of the time and place for hearing "complaints or objections" concerning the "appraisement and apportionment as to any such lots," etc., the complaints and objections contemplated are such as concern the equitable and just distribution of the total cost of the improvements, according to benefits received, upon the various lots or tracts of land affected. At such session of the council, any individual owning a lot affected can appear before the council and contend, and, if possible, convince the council that the appraisers have placed more of the total cost to be distributed upon his lot than is its just and equitable share thereof, according to benefits received. And the council, after hearing all complaints as to such apportionment, reviews, and, if need be, corrects such report, by raising

or lowering the amount the appraisers have charged to any lot as to the council may appear just. In doing this the individual lots only are affected. The total cost to be distributed, and which has been previously ascertained, is not changed. If one lot is lowered, another must be correspondingly raised; and a paper filed by a lot owner at such hearing, which makes no complaint as to the distribution of cost, but objects to "any assessment or taxes whatever" because "we deem same injurious to said streets and of no use or benefit whatever," and that "we will resist any and all payments of any kind or nature," is not a complaint or objection within the contemplation of the statute, and presents nothing for the council to pass upon.

2.  **SAME**—Where a contract for street improvement has been let under sections 722-733, Comp. Laws 1909, by the mayor and council, to the "lowest and best bidder," and is within the engineer's estimate, and jurisdiction of the subject-matter has been obtained by the council, and all the resolutions and proceedings required by law have been regular, and bids have been received and the contract let under the notice required, such action of the mayor and council is final as to the contract price of the work, in the absence of fraud, collusion, or mistake.

3.  **SAME—Estoppel to Question Validity.** Property owners in a street improvement district, with knowledge that the streets are being graded and otherwise improved by a contractor, with the intention that a special tax be levied against their property for the payment of same, who permit such improvement to be done, and stand by and see it proceeded with, without objection to the council, and receive the benefits to their property, will be deemed, when afterwards they seek relief in equity from the payment thereof, to have ratified same, and to be estopped from setting up any irregularity, except such as goes to the extent of jurisdiction.

4.  **SAME—Waiver of Irregularities.** Where proper notice of the time and place for hearing objections to the report of appraisers has been given, and property owners affected appear at such time and place, and file their objections without raising the question that the report was not filed within ten days after the appointment of the appraisers, they will be deemed to have waived such irregularity.

5.  **SAME—"For Five Successive Issues."** Where the notice required by section 726, Comp. Laws 1909, fixing the time for hearing objections to the report of appraisers, was published in a daily newspaper of general circulation in the city on the 19th, 21st, 22d, 23d, and 24th of June, 1909, the 20th being Sunday, on which date the paper was not published, **held**, that the notice was sufficient, the same being published in "five successive issues," as required by law.

(Syllabus by Brewer, C.)

*Error from District Court, Grady County;*
*F. E. Riddle, Judge.*

Action by M. Weaver and others against the City of Chick-asha and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

*W. M. Wallace,* for plaintiffs in error.

*Highley & Mills* and *W. H. Harris,* for defendants in error.

Opinion by BREWER, C. This is a suit by M. Weaver and other property owners in Improvement District No. 5 of the city of Chickasha, and is brought to set aside an assessment levied on the lots of plaintiffs in such district. It was filed in the district court of Grady county October 7, 1909. The plaintiffs in error here were the plaintiffs below, and the parties will be referred to herein as they were known in the trial court. At a trial on the 3d day of November, 1910, the court at the close of all the testimony sustained defendants' demurrer to the evidence. On November 4, 1910, the court overruled the motion for a new trial, and the plaintiffs appeal to this court.

The facts material to this inquiry briefly stated are: Improvement District No. 5 embraces a number of streets in the city of Chickasha. On October 23, 1908, the city council passed a resolution declaring the necessity of improving and grading the streets embraced in that district. This resolution was properly published for six days beginning October 25, 1908. On November 19th following the city council passed a second resolution reciting the passage and publication of the first one, and that no sufficient protests against the proposed improvement had been filed, and that bids for said work should be called for. The city engineer made plans and specifications for, and an estimate of, the costs of such improvement, filing same with the city clerk. Bids were advertised for, and on December 3, 1908, the bids received were opened and the contract awarded to the defendant Heman, who proceeded to improve and grade the streets according to the plans and specifications of the city engineer, under his contract. On April 23, 1909, H. B. Spender, Elmer Terrell, and Ben Hampton were appointed to appraise and apportion the

benefits of the improvements to the various lots and parcels of land in the improvement district. These appraisers performed their work, and on June 15, 1909, filed with the city council their appraisement and apportionment. The city council set July 1, 1909, at 2:30 p. m. as the date for hearing complaints and objections by property owners in such improvement district to the appraisement and apportionment so made. Notice of the time and place of hearing such protests and objections were published in the Chickasha Daily Express, a daily newspaper, published and of general circulation in the city of Chickasha, on the 19th, 21st, 22d, 23d, and 24th day of June, 1909. On the day named in such notice, July 1, 1909, at 2:30 p. m., the plaintiffs through their spokesman, Mr. Weaver, appeared before the city council, and presented and demanded a hearing upon the following written protest:

"To the Honorable Board of Mayor and Aldermen of Chickasha, Oklahoma—Gentlemen: We the undersigned hereby enter our protest against levying or collecting of any taxes whatever on the streets described by the published copy hereto attached. We deem same injurious to said streets and of no use or benefit whatever. We desire to state that we will resist any and all payment of any kind or nature. Respectfully submitted. [Signed] M. Weaver and by twenty-nine other names."

The notice referred to in this paper was the one published by the city clerk fixing the time and place for hearing objections to the appraisement and apportionment theretofore filed by the appraisers.

The plaintiffs contend that the assessment made against their property under above proceedings is void: (1) That the council refused to hear and consider the protests of plaintiffs; (2) because the contract was let for a price greatly in excess of that for which the work could have been done; (3) that the report of the appraisers was not filed within ten days after their appointment; (4) that the notice fixing the time for protests against the apportionment was not published for five successive issues of a daily newspaper as required by law.

1. No charge of fraud or collusion is made in this suit against the officers and agents of the city or the contractors.

No charge of irregularity is urged relative to any of the proceedings of the council from the preliminary resolution of the necessity of the improvement up to the filing of the report of the appraisers showing the appraisement and apportionment of the cost of the work upon the various individual lots and parcels of land in the district. No protest or objection to making the improvement was filed, as the parties had the right to do under the law; but, instead, the various resolutions were passed and published, the contract was let on competitive bidding, and the improvement and grading was permitted to proceed without objection, until it was nearing completion, when the paper set out above was filed as a protest. The protest was filed under section 726, Comp. Laws 1909, which provides, in substance, that, as soon as the cost of the improvement is ascertained, the council shall appoint a board of appraisers to appraise and apportion the benefits to the lots and tracts of land liable for the cost of the construction of the improvements; and that, when such board shall have completed its work, it shall return and file its report thereof with the city clerk. When this is done, the act further provides that the mayor and council shall thereupon "appoint a time for holding a session on some day to be fixed by them to hear any complaint or objections that may be made concerning the appraisement and apportionment as to any of such lots or tracts of land, and notice of such session shall be published by the city clerk in five successive issues of a daily newspaper or two issues of a weekly newspaper published and of general circulation in said city," etc. The mayor and council at said session "shall have the power to review and correct said appraisement and apportionment and to raise or lower the same, as to any lots or tracts of land as they shall deem just, and shall, by resolution, confirm the same as so revised and corrected by them. * * *" This provision does not authorize or contemplate such a protest, or such objections as were filed in this case. The protest was "against levying or collecting *any taxes whatever*," because "*we deem same injurious to said streets, and of no use or benefit whatever.*" And it closes by saying: "We will resist *any and all payments* of any kind or nature." (Italics ours.)

The complaints or objections of property owners to be heard by the council at this stage of the proceedings were such as concerned an equitable and just distribution of the total cost of the improvements, according to benefits received, upon the various lots and tracts of land affected. If one proprietor owned all the lots, it might be quite immaterial about the distribution; but where the lots, to be in the aggregate charged with this total cost, are owned by different individuals, then it always is a question of deep individual concern, as to the apportionment or distribution upon the various lots of this total cost of improvement. This being true, this session of the council was called, and notice of the time and place given, so that any individual affected could appear before the council and contend, and if possible convince the council, that the appraisers had placed more of the total costs to be distributed upon a certain lot or tracts of land than would be its equitable and just share thereof, according to benefits received. And at this session, after hearing all lot owners who complain, the council considers the whole matter and reviews, and, if need be, corrects the report by raising or lowering the amount the appraisers have charged to any lot, according to what the council finds to be just. In doing this the total cost remains the same. Assuming that it has already been accurately determined under the contract, the corrections merely affect the individual lots. If one is lowered, some other lot is raised, etc. Therefore this session of the council at which the protest was filed was neither the time nor place to show that no improvements should in fact have been made, or that they are neither needed nor beneficial, or that the owners object to any assessment being made to pay for them. It follows that there was nothing before the council under this protest to be considered. However, the record shows that the council did "examine and review the assessment and apportionment as to each of said lots and tracts of land."

2. Neither can the next point raised—*i. e.*, that the contract was let at an excessive price—be sustained. Section 725, Comp. Laws 1909, with perhaps as much care as is possible, guards the interests of the lot owners in the matter of letting the contracts

for public improvements.  It provides that after publication of the preliminary resolution, where no protests have been filed, a resolution shall be accepted reciting such fact, and announcing the purpose to proceed with the work, and defining the extent, character, and width, and the material to be used in the improvement, the manner of construction, etc.  The engineer is directed to prepare plans, plats, profiles, specifications, and estimates of the work.  Reasonable terms for letting the work shall be set forth; that bonds shall be given for the faithful performance of the work, and the protection of the city and property owners, etc. The section then proceeds:

"Said resolution shall also direct the city clerk to advertise for sealed proposals for furnishing the materials and performing the work necessary in making such improvement.  The notice for such proposals shall state the street, streets or other public places to be improved, the kinds of improvements proposed, what, if any, bond or bonds will be required to be executed by the contractor as aforesaid and shall state the time when and the place where such sealed proposals shall be filed and when and where the same shall be considered by the mayor and council.  Said notice shall be published in ten consecutive issues of a daily newspaper or two consecutive issues of a weekly newspaper published and of general circulation in said city.  At the time and place specified in such notice, the mayor and council shall examine all bids received and without unnecessary delay, award the contract to the lowest and best bidder, who will perform the work and furnish the materials which may be selected and.perform all the conditions imposed by the mayor and council as prescribed in such resolution and notice for proposals, which contract shall in no case exceed the estimate of cost submitted by the engineer with the plans and specifications, and the mayor and council shall have the right to reject any and all bids and to readvertise for other bids when any such bids are not, in their judgment, satisfactory."

The Legislature, it will be observed, has provided, not only for wide publicity relative to letting the work, but has prohibited its being let for a sum greater than the engineer's estimate; and, to prevent pooling by the bidders, or any other injustice to the city or property owners, has left the council free to reject any and all bids on the work, when for any reason they are not sat-

isfactory. Giving notice for bids affords opportunity for com-
petition, which ought ordinarily to insure a reasonable price, but
this is not of itself sufficient, and the bid to be accepted must
not exceed the estimate made by the city engineer whom the
citizens of the town have either directly or indirectly selected;
and then, to make it reasonably certain that an excessive price
for the work will not be paid, the mayor and council, officers
whom the citizens have elected, finally test the bid by their own
judgment as to whether the prices named are fair and reason-
able. When they have applied this judgment and discretion,
and have let the work to the lowest and best bidder, within the
engineer's estimate, and in conformity to the statutes and reso-
lutions passed, such decision, in the absence of fraud, collusion,
or mistake, is final as to the contract price, where the proceed-
ings up to that point have been regular and jurisdiction of the
subject-matter has once been obtained. Page & Jones On Assess-
ments 485, 497, 520; *Palmer v. City of Danville*, 166 Ill. 42, 46 N.
E. 629; *Rogers v. City of St. Paul*, 22 Minn. 494.

And further under the facts and circumstances of this case,
which it is unnecessary to again mention in detail, the plaintiffs
are estopped. *City of Perry v. Davis et al.*, 18 Okla. 458, 90 Pac.
874; *Kerker v. Bocher*, 20 Okla. 729, 95 Pac. 981. In the first
of these cases it is said:

"The evidence discloses that the defendants stood by with-
out objection or protest when the construction of the sewer
adjacent to their property was in progress. Equity does not look
with favor upon their silent and approving acquiescence of the
performance of labor and expenditure of money enhancing the
value of their properties, when contrasted with their belligerent
and warlike attitude exhibited for the first time after the full
completion of the work. It was the plain duty of defendants in
error upon the publication of the ordinance creating the sewer
district, or when they discovered that money and labor was being
expended in the actual construction of a sewer, to vigorously ob-
ject and protest against it. Then was the opportune time to test
by injunction or other proceedings the legality of the various
steps being taken. * * * Under such circumstances, both
law and equity look with approval upon the payment of such
assessments, especially when made for a public work of this
character."

And in the second case Chief Justice Williams uses the following language:

"Abutting property owners, with knowledge that such paving is being done, with the intention of levying a special tax upon them for the payment of the same, and permitting such improvement to be done without objection to the council and knowingly receiving the benefits, when afterwards they seek relief in equity, to escape payment therefor, will be deemed to have ratified the same and are estopped from setting up any irregularity except when it goes to the extent of jurisdiction."

Page & Jones on Assessments, 1015; *Shepard v. Barron,* 194 U. S. 553, 24 Sup. Ct. 737, 48 L. Ed. 1115; *Treat v. City of Chicago,* 130 Fed. 443, 64 C. C. A. 645; *Ashton v. Rochester,* 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619; *Hutchinson v. Commissioners,* 48 Kan. 70, 28 Pac. 1078, 15 L. R. A. 401, 30 Am. St. Rep. 273.

3. Plaintiff's next contention that the proceedings are void because the report of the appraisers was not filed within ten days, as provided by section 726, Comp. Laws 1909, cannot be sustained. This irregularity has been waived. The notice of a time and place to consider this report and to review and correct same was given, and plaintiffs appeared and set forth their objections to the same, and, upon the foundation laid at such hearing, predicate all their allegations of rights here. In the objections so filed, which have been set out in full, *supra,* no complaint is made on this point. The objection that the report was not made within the ten days should have been made before its confirmation. *Com'rs, etc., v. Smith,* 233 Ill. 417, 84 N. E. 376, 16 L. R. A. (N. S.) 292. The cases cited from New Jersey—*State v. Trenton,* 47 N. J. Law, 489, 4 Atl. 312, *State v. Bergen,* 33 N. J. Law, 72—to sustain plaintiffs' contention arose under a statute fundamentally different from ours and they are therefore not in point.

4. The remaining point that the notice of the time for objections to the report of the appraisers was not published in five successive issues of a daily newspaper, thus invalidating the proceedings, is not sound. Section 726 requires that such notice "shall be published * * * in five successive issues of a daily newspaper," etc. The one in question was published in a daily

newspaper on the 19th, 21st, 22d, 23d, and 24th days of June, 1909. The 20th was Sunday, and it is not shown that this paper was issued on such day, and section 730, Comp. Laws 1909, seems to dispose of the point against plaintiffs' contention. It reads:

"That the publication of all notices in a daily newspaper called for in this act shall.be the number of days therein specified, exclusive of Sundays and legal holidays."

We find no error in the case requiring a reversal, and the judgment of the trial court should be affirmed.

By the Court:   It is so ordered.