### WILHITE et al. v. CRUCE et al.

No. 8814—Opinion Filed April 30, 1918.

Rehearing Denied May 21, 1918.

(172 Pac. 962.)

1. **Constitutional Law — "Due Process of Law."**

By due process of law is meant the enforcement of right or prevention of wrong before a legally constituted tribunal having jurisdiction over the class of cases to which the one in question belongs, with notice to the party upon whom the law exhausts itself or upon whose property rights it operates, with an opportunity to appear and be heard in his own defense.

2. **Same—Exercise of Powers of Commissioners of Land Office.**

The commissioners of the land office have authority to exercise such ministerial and judicial functions respecting the state's school lands as may be conferred upon them by the Legislature, and the exercise of such powers is not a denial of "due process of law" under either the Fourteenth Amendment to the federal Constitution or section 7, art. 2, of the state Constitution.

(Syllabus by Springer, C.)

Error from District Court, Kay County; Wm. M. Bowles, Judge.

Action by Charles A. Wilhite and Catherine M. Wilhite against Lee Cruce and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

G. A. Campbell, for plaintiffs in error.

F. C. Duvall, Co. Atty., Claude Duvall, S. P. Freeling, Atty. Gen., and W. R. Bleakmore, Asst. Atty. Gen., for defendants in error.

Opinion by SPRINGER C. The parties, occupying the same position in this court as in the court below, will be referred to as a matter of convenience in this opinon, as plaintiffs and defendants.

The plaintiffs instituted suit against the defendants in the district court of Kay county, Okla., to recover possession of the southwest quarter (S. W. ¼) of 16, 29 north, 1 west, the same being state school lands, from

which they alleged to have been ousted from possession without due process of law. To the petition is attached a copy of the lease, notice of appraisement, notice of forfeiture for nonpayment of rent, notice of sale of lease rights and improvements, notice that forfeiture had been made, and all the various proceedings and orders and findings of the commissioners of the land office, of all of which it is alleged that plaintiffs had due notice and knowledge, and all of which appear to be regular and in due form. The court below sustained a general demurrer interposed by all of the various defendants, and the plaintiffs elected to stand on their amended petition, and refused to plead further, and the court rendered judgment dismissing the case.

It is not contended by the plaintiffs that the commissioners of the land office did not act in all respects in conformity to the provisions of the statute; nor is the claim made that the commissioners of the land office in any way exceeded the authority conferred upon them by statutory enactment. It is, however, claimed that the act of the Legislature, conferring upon the commissioners of the land office the powers which they exercised respecting the leasehold of the plaintiffs, is illegal and void because it invaded their constitutional rights, as occupants of the state's school land, to a trial in the justice of the peace court in an action of forcible detainer.

The record in this case discloses that the plaintiffs discontinued the payment of the rentals to the state in contravention of the terms of the lease, and denied the property right of the state in the premises by attempting a homestead filing on the land under the homestead laws of the United States. The land in dispute here, being a part of section 16, became the property of the state by the adoption of the Constitution. Section 9 of the Enabling Act provides:

"That said sections sixteen and thirty-six, and lands taken in lieu thereof, herein granted for the support of the common schools, if sold, may be appraised and sold at public sale in one hundred and sixty acre tracts or less, under such rules and regulations as the Legislature of the said state may prescribe, preference right to purchase at the highest bid being given to the lessee at the time of such sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of such schools. But said lands may, under such regulations as the Legislature may prescribe, be leased for periods not to exceed ten years; and such lands shall not be subject to homestead entry or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

Section 1, art. 11, of the Constitution accepts the grant:

"The state hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act, and any other acts of Congress for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated. * * *"

Section 32, art. 6, of the Constitution provides:

"The Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and the President of the Board of Agriculture, shall constitute the commissioners of the land office, who shall have charge of the sale, rental, disposal, and managing of the school lands and other public lands of the state, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature."

The commissioners of the land office is obviously a constitutional body, with authority to sell, rent, dispose of, and manage the school lands and other public lands of the state, and of the funds and proceeds derived therefrom "under such rules and regulations as may be prescribed by the Legislature." The Legislature has, from time to time, enacted laws conferring upon the commissioners of the land office authority to manage the public lands of the state, and the funds and proceeds derived therefrom, and providing rules and regulations therefor.

The land in dispute here was duly appraised, together with improvements thereon, according to article 2, c. 49, Sess. Laws 1907-08, and the plaintiffs were duly notified of such appraisement. There were never any objections filed with the commissioners of the land office, nor claim made that the appraisement of the lands and improvements was not fair and just, nor was there any appeal taken from such appraisement as provided by section 7184, Rev. Laws 1910. Section 7177, Rev. Laws 1910, provides:

"If the lessee of any of the lands enumerated herein shall be in default of the annual rental due the state for a period of three months, the commissioners of the land office shall cause notice to be given such delinquent lessee, that if such delinquency is not paid within thirty days from the service of such notice his lease will be declared, at their option, forfeited to the state by the commissioners of the land office. If the amounts due are not paid within thirty days from the date of the service of such notice, the said lease shall be declared forfeited and

the land therein described shall revert to the state, the same as though such lease had never been made. The order making such forfeitures shall be spread upon the records of the commissioners of the land office. The service of the notice herein contemplated shall be made by registered letter; in case the post office address of the owner of such lease be unknown, the notice herein contemplated shall be published in two consecutive issues of some weekly newspaper published in or of general circulation in the county where the land is situate. The forfeiture may be entered by said board after thirty days from the date of such published or registered notice: Provided, that the lessee of any land so forfeited may redeem the same by paying all delinquencies, fees and costs of forfeiture at any time before such land is advertised to be leased, as provided by this article. * * * The improvements on land so reverting to the state shall be sold under the direction of the commissioners of the land office at public or private sale, upon due notice to the lessee, and the proceeds received therefrom shall inure to the holder of the delinquent lease after payment shall have been made to the state for all delinquencies and rents and expense incurred in making such sale."

This statute is the one by virtue of which the commissioners of the land office took action against the plaintiffs, excepting the appraisement and notice thereof was made and given under the Laws of 1907-08. The record in this case discloses that every provision of the law was studiously observed and strictly followed by the commissioners of the land office, and plaintiffs given every opportunity afforded by law to pay their rent and redeem their lease. Section 7186. Rev. Laws 1910, confers upon the commissioners of the land office the authority to hear and determine protests and contests growing out of any lease or assignment, and make such order in relation thereto as the evidence and law justifies. And section 7187, Rev. Laws 1910, provides:

"From all decisions of the commissioners of the land office an appeal may be taken by any person affected thereby to the district court of the county where the land is situated. * * *"

It is, however, claimed by the plaintiffs that the proceedings of the commissioners of the land office, under section 7177, by which their interest in an unexpired lease was forfeited and the improvements sold, did not afford to them and their property rights due process of law; that the commissioners of the land office had not authority to exercise judicial functions, render judgment, and enforce its decree, ousting them from possession of the lands, and that by so doing their constitutional rights were invaded under the

Constitution of the United States and of this state. In order to test a piece of legislation to determine whether it is a denial of due process of law, resort must first be had to the Constitution itself, to see whether it conflicts with any of its provisions. If not found to be in conflict with any of the constitutional provisions, we must look to those settled usages and principles of the law to determine whether it denies the necessity of notice and the right to appear and be heard before judgment; these being fundamental and established rights. Section 1, art. 7, of the state Constitution, provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court as may be established by law."

It is well to bear in mind that the legislative department of the state has all the powers not prohibited by the state Constitution. The state Constitution never enlarges the powers of the legislative department, but restricts them, and the only limitation upon the legislative department, with reference to the creation of judicial bodies, is that courts, commissions, and boards created by it shall be inferior to the Supreme Court. Obviously the Legislature had the authority to vest a portion of the judicial power of this state in other tribunals than those specifically named and designated in the Constitution.

A definition of "due process of law" applicable to all cases is difficult, if not impossible, to give. A definition applicable to the particular case under consideration has been given by various courts, and text-writers. "'Due process of law' in each particular case means such an exertion of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Cooley on Const. Lim. § 356; Lent v. Tillson, 72 Cal. 404, 14 Pac. 71.

In his argument in the Dartmouth College Case, Daniel Webster defined it as:

"A law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629.

It has been defined as:

"Law in its regular course of administration through courts of justice." 2 Kent Comm. 10; San Jose Ranch Co. v. San Jose Land, etc., Co., 126 Cal. 322, 58 Pac. 824.

The term "due process of law" as used in the federal Constitution has repeatedly been declared to be the equivalent of the phrase "law of the land," as used in Magna Charta. The English courts applied the phrase "law of the land," as having reference to the common and statutory law then existing in England, and when embodied in the Constitution of the United States and the Constitution of the various states it had reference to the same common law as previously modified and as far as suited to the varying political conditions and wants and usages of the people. "Due process of law," or, as some courts use the phrase, "law of the land," simply means a general and public law operating equally on all persons in like circumstances. It does not mean a partial law operating upon the rights of a particular person in a way in which the same rights of all persons in like circumstances are not affected. The law must embrace all persons in like circumstances, and the classification must be just and reasonable, and not arbitrary and capricious. Due process of law is denied when any individual of a particular class is singled out and hampered with the imposition of restraint, not borne by all members of the same class or community at large. A law which operates and exhausts itself upon a particular person, denying him rights that are enjoyed by other persons in like circumstances in the community as a whole cannot be upheld, as it denies equal protection of the law.

The essential elements of due process of law are a tribunal with jurisdiction to adjudicate upon the subject-matter of the controversy, notice to appear, and an opportunity for each side to be heard in person or by counsel respecting the matters in dispute. A law which requires notice to be given and the right to a hearing before judgment, with ample opportunity to present all the evidence and argument which the party deems important, is all that can be adjudged vital under due process of law. By due process of law is meant the enforcement of right or prevention of wrong, before a legally constituted tribunal having jurisdiction over the class of cases to which the one in question belongs, with notice to the party upon whom the law exhausts itself, or upon whose property rights it operates, with an opportunity to appear and be heard in his own defense.

The question naturally arises, Were the plaintiffs in this case denied the benefit of its application? The Fourteenth Amendment to the federal Constitution in no way limits the power of the legislative department of this state to say what forum shall determine the property rights of its citizens, nor by what procedure legal rights may be asserted or legal obligations enforced. The Fourteenth Amendment contemplates only that fundamental and established rights shall be preserved; that is, a legally constituted tribunal having jurisdiction over a particular class of cases to which the one in question belongs, with notice and an opportunity to appear and be heard in one's own behalf. The law assailed by the plaintiffs denied them no rights vouchsafed under either the Fourteenth Amendment to the federal Constitution nor section 7 of the Bill of Rights of this state.

The commissioners of the land office is the only tribunal in which may be initiated proceedings for the determination of the rights of a particular class of persons. The law provides for notice to be given, and affords opportunity to appear and be heard before the commissioners, and for appeals from their decisions to the district court of the county where the lands are located, and in that tribunal a trial de novo shall be had. Under the statute the commissioners of the land office have authority to prescribe rules and regulations governing the sale, rental, disposal, and management of the state school lands, and the funds and proceeds derived therefrom, to hear and determine protests and contests and make findings of fact, and to exercise such ministerial and judicial powers and functions as may be conferred upon them by the Legislature.

It follows that the judgment of the lower court must be affirmed; and it is so ordered.

By the Court: It is so ordered.