## PRYOR v. WESTERN PAVING CO. et al.

No. 6222—Opinion Filed July 15, 1919.

Second Petition for Rehearing Denied Oct. 7, 1919.

(184 Pac. 88.)

**1. Constitutional Law—"Due Process of Law."**

By "due process of law" is meant an orderly proceeding, adapted to the nature of the case, before a tribunal having jurisdiction, which proceeds upon notice, with an opportunity to be heard, with full power to grant relief.

**2. Same—Fourteenth Amendment—Limitation on States.**

The Fourteenth Amendment to the federal Constitution is not a limitation upon the rights of the several states exercising such powers as are political and legislative in their nature, and does not control the procedure affecting the rights of citizens, so long as the fundamental principles which inhere in due process of law are observed.

**3. Municipal Corporations — Determination of Necessity to Pave Street—Notice.**

The powers conferred upon the city officials by section 7, art. 10, of the Constitution of this state, and section 723, Snyder's Comp. Laws 1909, to determine whether a certain street shall be paved, being political and legislative in its nature, a citizen whose property rights are affected thereby is not entitled to a notice and hearing before determining to make the improvement on the question of whether his property will be benefited thereby.

**4. Constitutional Law—Municipal Corporations—Paving Streets—Hearing—Notice—Due Process of Law.**

Section 726, Snyder's Comp. Laws 1909, providing for a notice and hearing before the city officials, with full power to grant relief, meets all the fundamental requirements inhering in due process of law; and where a protest and objection is filed as therein provided for, it is the duty of the city officials to hear and determine the same, and not act arbitrarily and capriciously.

**5. Municipal Corporations — Protest to Pavement of Street—Insufficiency.**

An objection filed with the city officials upon the ground the property of the objector is not benefited is not such as is contemplated by the statute; that question being peculiarly the prerogative of the city officials under the law.

**6. Same—Abutting Owner not Making Protest—Estoppel.**

A person with knowledge that paving is being done with the intention of levying a special tax upon his property abutting there-on to pay for the same, and knowingly receiving the benefits, without making proper protest to the city officials, will be deemed to have ratified and accepted such benefits, and is estopped to deny the same, except he may invoke equitable relief, where there has been irregularity extending to jurisdiction.

**7. Same — Injunction Against Excessive Assessment—Insufficient Petition.**

A petition for injunction against an excessive assessment for paving, which fails to allege the amount of benefit and confessing a willingness to pay for the same, if any part of the assessment against the owner's land is valid, fails to state a cause of action calling for injunctive relief.

(Syllabus by Springer, C.)

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Suit by D. C. Pryor against the Western Paving Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Everest & Campbell and S. A. Horton, for plaintiff in error.

B. D. Shear, A. T. Boys, and G. A. Paul, for defendants in error.

Opinion by SPRINGER, C. The parties, occupying the same relative position in this court as in the court below, will be referred to as plaintiff and defendant. The plaintiff instituted this action against the defendants to enjoin the city from issuing street improvement bonds and certifying a special assessment tax to the county treasurer of Oklahoma county for paving Robinson avenue, from Ash street to Avenue G, in Oklahoma City, and to quiet his title to the land described in his petition. The effect of the suit is to enjoin the collection of assessments levied for the improvement of the street.

It is claimed by the plaintiff that the acts of the city officials are illegal and void, because the authority they assumed to exercise under the law amounts to a confiscation of his property without due process of law, and therefore the statute, by virtue of which the city took action, is void. It has been said that the term "due process of law" is difficult, if not impossible, to define, so as to be full, complete, accurate, appropriate, and comprehensive under all circumstances; and our investigation of this subject has committed us irrevocably to the conclusion that a definition of the phrase comprehending every permissible exertion of power, affecting private rights and excluding such as are forbidden, may never be given. In

the case of Charles A. Wilhite et al. v. Lee Cruce et al., 70 Okla. 70, 172 Pac. 962, this court defined due process of law to be:

"By due process of law is meant the enforcement of right or prevention of wrong, before a legally constituted tribunal having jurisdiction over the class of cases to which the one in question belongs, with notice to the party upon whom the law exhausts itself, or upon whose property rights it operates, with an opportunity to appear and be heard in his own defense."

This definition however, is not 'sufficiently comprehensive to embrace within its scope all cases, because the definition in each case depends not so much upon the quality of the act as upon the relation of the particular law authorizing it to the fundamental law which limits the power of the law-making body. Due process of law must be understood to mean law in the regular course of administration through tribunals, according to those rules and forms which have been established for the protection of private rights and the prevention of injustice and wrong. Kennard v. Louisiana, 92 U. S. 480, 23 L. Ed. 478. It also means such an exercise of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of private rights as these maxims prescribe for the class of cases to which the one in question belongs. Wulzen v. Board of Supervisors of San Francisco, 101 Cal. 15, 35 Pac. 353, 40 Am. St. Rep. 17; Water Com'rs of Norwich v. Johnson. 86 Conn. 151, 84 Atl. 727, 41 L. R. A. (N. S.) 1024.

The plaintiff invokes the constitutional limitations of this state and also the Fifth and Fourteenth Amendments to the Constitution of the United States, and on general principle every citizen is entitled to the protection afforded by these fundamental provisions of liberty and justice which lie at the base of all our civil and political institutions. The Constitution makes no provision for the application of principles for the purpose of determining whether there has been due process of law in a particular case; but there are certain immutable principles which inhere in the very idea of free government, which no state can ignore. The term "due process of law" includes all the steps essential to deprive a person of life, liberty, or property. It includes all the forms and acts essential to its application and to give effect to it, and in determining whether the requirement has been observed regard must be had rather to the substance than the form. But in its most accepted and best understood application, due process of law simply means a general

and public law operating equally on all persons in like circumstances. It does not mean a partial law operating upon the rights of a particular person, or exhausting itself upon his life, liberty, or property in a way in which the same rights of all persons in like circumstances are not affected. The law must embrace and affect the rights of all persons in like circumstances equally, and the law must be just and reasonable, and not arbitrary and capricious. It is a denial of due process of law to single out an individual of a particular class and hamper him with the imposition of restraint, not borne by all members of the same class or community at large. A law operating and exhausting itself upon the rights of a particular person denying him rights that are enjoyed by other persons in the community as a whole, must fall, as it denies equal protection of the law. The indispensable elements of due process of law are an investigating tribunal, with full power to hear and determine the subject-matter of the controversy, notice to appear, and an opportunity to be heard respecting the matters in dispute. A law which requires notice to be given, and affords the rights to be heard, with ample opportunity to present all the evidence and argument which the parties deem important before judgment, is all that can be adjudged vital under due process of law.

Having paused to consider the principal elements of due process of law, we shall next proceed to a determination of their application. The phrase "due process of law" did not originate in the American system of constitutional law, but was contained in Magna Charta as a part of the ancient English liberties. Chapter 39, of that document of human rights, confirmed on the 19th day of June, 1215, declared that—

"No free man shall be taken, or imprisoned, or disseized, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him, nor send upon him, but by the lawful judgment of his peers or by the law of the land."

It is evident the provision was intended to secure the subject against the arbitrary action of the crown. This principle came from England, and being not unsuited to our personal, political, and civil rights, was ingrafted into the Constitution of the United States by the Fifth Amendment, and was intended as a limitation upon the powers of Congress, and the Fourteenth Amendment was intended as a limitation upon the powers of the several states by legislative enactment to encroach upon the acknowledged

rights of citizens. So in giving effect and application to the phrase "due process of law," which is held to be equivalent to the phrase "the law of the land," the courts of last resort of this country have looked to the English decisions for enlightenment and understanding. Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Murray v. Hoboken L. & I. Co., 18 How. 272, 15 L. Ed. 372; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616. Our courts have held it to mean the general body of the law, common the statutory enactment, that was in existence at the time the Constitution took effect. Martin v. Dix, 52 Miss. 53, 24 Am. Rep. 661; State v. Loomis, 115 Mo. 307, 22 S. W. 350. 20 L. R. A. 789. The law of the land means the law of the state in which the proceeding is instituted.

The prohibition of the federal Constitution does not mean that a state must observe the due process of law of another state over which it has no control. The guaranty of due process of law does not of itself necessarily require a trial by jury in all cases. It is not denied simply because no appeal is provided for; one hearing being deemed sufficient to meet its requirements. Pittsburg, etc., v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Reetz v. Michigan, 188 U. S. 505, 32 Sup. Ct. 390, 47 L. Ed. 563. It is not denied simply because actual personal notice is not given in all cases; except where judgment purely in personam is sought, constructive service being held sufficient. Hager v. Reclamation Dist. No. 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Lent v. Tillson, 140 U. S. 316, 11 Sup. Ct. 825, 35 L. Ed. 419; Paulsen v. Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 673. The constitutional right to a hearing does not exist in all classes of cases, where rights or individuals are affected or interfered with by official action or procedure. All questions which are political in their nature and lie within the legislative province may be determined without notice or hearing. The power to exercise the right of eminent domain, and all questions of taxation, and the question whether a particular work shall be done, or improvements of a public nature shall be made, or particular property taken by the duly constituted authorities, furnish splendid illustrations of cases in which the owner is not entitled to a hearing as a matter of right. Board of Water Com'rs of Norwich, v. Johnson, 86 Conn. 151, 84 Atl. 727, 41 L. R. A. (N. S.) 1024; Wulzen v. Board of Supervisors, 101 Cal. 15, 35 Pac. 353, 40 Am. St. Rep. 17, and cases therein cited.

While ordinarily the constitutional requirement as to due process of law implies a formal judicial proceeding, it is, however, well settled that this is not indispensable to such a proceeding. It is not a denial of due process of law for commissioners and boards to exercise administrative powers when executing statutory enactment affecting the rights of citizens, so long as they observe the fundamental principles which inhere in due process of law. Palmer v. McMahon, 133 U. S. 660, 10 Sup. Ct. 324, 33 L. Ed. 772; Public Clearinghouse v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092; Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721.

In determining what is due process of law, we must observe the object of the taking, and as to whether the right is exercised under the taxing power, or of eminent domain, or the power of making assessments for local improvements. If the proceeding is found to be suitable or permissible in the special case, it must be adjudged to be due process of law. Davidson v. New Orleans, supra, Wulzen v. Board of Supervisors, supra, and cases therein cited.

We have already observed that the Fifth Amendment to the federal Constitution was adopted as a limitation upon the powers of Congress, and that the Fourteenth Amendment was adopted as a limitation upon the powers of the several states; but that provision does not, control mere forms of procedure in state courts or regulate practice therein, nor is it designed to regulate errors in the administration of the law not involving jurisdiction of the subject-matter of the controversy or of the parties. Hagar v. Reclamation Dist. No. 108, supra; Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Marchant v. Pa. R. Co., 153 U. S. 380, 14 Sup. Ct. 894, 38 L. Ed. 751; Japanese Immigration Case, supra.

Having noticed the fundamental principles and their application of due process of law, we shall next proceed to the inquiry: Is the statute under which the city authorities proceeded void because by exercising the powers therein conferred the plaintiff's property was taken without due process of law, because forsooth, the cost of the paving amounts to $13,467, and the property was not worth to exceed $7,500, and because the statute does not require property to be assessed according to benefits, and does not provide for time, place, or tribunal to hear, pass on, and determine benefits. By section 723. Snyder's Comp. Laws, 1909. the Legislature conferred upon the city officials the

power to determine whether the paving should be done, and by conferring such functions upon the city officials the Legislature was exercising its undoubted political and legislative powers, and therefore the prudence or imprudence of resolving upon and determining to order the paving can have no controlling influence here so long as the necessary requirements of the statutes are observed. Wulzen v. Board of Supervisors, supra, and cases above cited. This same section provides for the publication of the resolution, which was done, and no protest was filed, which a majority of the parties, whose property was affected, had a right to do. Section 724 provides that land fronting or abutting upon the improvement shall be charged with the cost thereof. Section 725 provides for an estimate of the cost to be made by the engineer and letting the contract. Section 726 provides for the appointment of the board of appraisers to appraise and apportion the benefits to the several lots and tracts of land, and provides:

"* * * When said report shall have been so returned, the mayor and council shall appoint a time for holding a session on some day to be fixed by them to hear any complaints or objections that may be made concerning the appraisement and apportionment as to any of such lots or tracts of land, and notice of such session shall be published by the city clerk in five successive issues of a daily newspaper or two issues of a weekly newspaper published and of general circulation in said city and the time fixed for said hearing shall not be less than five, nor more than ten days from the last publication. The mayor and council at said session shall have the power to review, and correct said appraisement and apportionment and to raise or lower the same, as to any lots or tracts of land as they shall deem just, and shall, by resolution, confirm the same as so revised and corrected by them. * * *"

Thus it is seen that the statute does make provision for fixing a time, the giving of notice, and the hearing of complaints by the city officials, with full power to grant relief. But it is urged that no provision is made for a hearing upon the question of benefit before or after the contract is let. Under the authorities above cited, this is quite beside the question; the Legislature, in the exercise of its political and legislative powers, having left that question to the city authorities for their determination. French et al. v. Barber Asphalt Pav. Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; L. & N. R Co v. Pav. Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; Okla. R. Co. v. Severns Pav. Co. et al., 67 Okla. 206, 170 Pac. 216.

After the appraisers have appraised and apportioned the benefits and filed their report, the city authorities are required to appoint a time for holding a session, and publish notice thereof, at which time they shall hear any complaints or objections that may be made concerning the appraisement and apportionment as to any of the lots or tracts of land.

The city authorities are given full power to correct any appraisement or apportionment, by raising or lowering the same, as the facts may justify. Such proceeding meets all the requirements of due process of law. Of course, the city authorities cannot act arbitrarily or capriciously in revising the appraisement and apportionment. Every requirement of the statute was strictly followed in this case. The plaintiff never filed such complaint or objection as is contemplated by the statute. The objection was based upon the ground that his property was not benefited in any manner, when he could complain and object only to the appraisement and apportionment of the benefits. Weaver v. City of Chickasha, 36 Okla. 226, 128 Pac. 305. But the plaintiff is in no position to now object to paying for the paving. This record discloses that at the time he made his first objection the work was practically done. He made no effort and took no step to prevent the work until after completion thereof, and it is no longer an open question in this jurisdiction that one who stands by and permits work of a public nature to be done, which benefits his property, is estopped from asserting any irregularity in the proceedings and denying that his property was benefited thereby. Kerker v. Bocher, 20 Okla. 729, 95 Pac. 981; Weaver v. Chickasha, 36 Okla. 226, 128 Pac. 305.

No allegation is made that the assessment is void because of a failure by the city authorities to observe the necessary requirements of the statute. It is obvious that the plaintiff received some benefit, and, while under the recent holding by this court in the case of Durant et al. v. Stanfield et al., 77 Okla. 112, 186 Pac. 939, it was not necessary for the plaintiff to offer to do equity before invoking the aid of equity, it was, nevertheless, necessary for him to allege and confess a willingness to pay the amount that was legal and just before he could state a cause of action. If any part of the assessment against his land was valid, he was not entitled to the relief sought until he had paid or offered to pay such part as is valid. Jenkins v. Oklahoma City, 27 Okla. 230, 111 Pac. 941.

We have noticed the contention of the plaintiff that by provision of section 817,

Snyder's Comp. Laws, tracts of land in excess of 40 acres shall not be subject to city taxes. It is a sufficient answer to this contention to say that assessments for special benefits conferred upon land is not a city tax within the contemplation of the statute.

It is claimed that the street running through the plaintiff's land was originally dedicated for a county highway, and therefore, when the property was taken into the city, the purpose for which the road was dedicated ceased, and it reverted to the plaintiff, and it became necessary for the city authorities to take the property by condemnation proceedings. This contention is not tenable. When the property of the plaintiff was taken into the city, all dedicated roads and highways through it became the streets of the city.

We find no error in the record prejudicial to the rights of the plaintiff, and the judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.