## OKLAHOMA GAS & ELECTRIC CO. et al. v. WILSON & CO. et al.

No. 17859. Opinion Filed April 29, 1930.

Rehearing Denied May 27, 1930.

Ames, Lowe & Cochran, for plaintiff in error Oklahoma Natural Gas Company.

Rainey, Flynn, Green & Anderson, for plaintiff in error Oklahoma Gas & Electric Company.

C. D. Bennett (A. Gray Gilmer and Burford, Miley, Hoffman & Burford, on the briefs), for defendant in error Wilson & Company.

274

CULLISON, J. This is a proceeding in this court to review an order of the Corporation Commission of the state of Oklahoma, entered April 13, 1926 (Order No. 3388), directing the Oklahoma Natural Gas Company to supply Wilson & Co., Inc., of Oklahoma, at its packing plant located adjacent to the city of Oklahoma City, with natural gas, at a specified rate, as hereinafter set forth.

Wilson & Co., defendant in error herein, plaintiff in the proceeding before the Corporation Commission, will hereinafter be referred to as "plaintiff."

The Oklahoma Natural Gas Company and the Oklahoma Gas & Electric Company, plaintiffs in error on this appeal, defendants in the proceeding before the Corporation Commission, will hereinafter be referred to as "defendant Oklahoma Natural," and "defendant O. G. & E.," respectively.

On November 13, 1925, Wilson & Co., plaintiff, a corporation, filed a complaint before the Corporation Commission of .the state of Oklahoma, against the defendants above named.

Plaintiff alleges upon information and belief that the defendant Oklahoma Natural owns, operates, and maintains the main line leading from the gas fields aforesaid north on May avenue to Oklahoma City, and the branch line leading off from May avenue, and east on Ash street, and also the service or lead line from the Ash street line into the boiler room of the plaintiff.

Plaintiff alleges that it is now and has been for some years past supplied with fuel gas from the lines and mains of the defendant Oklahoma Natural, as heretofore described, and for said services the plaintiff has been paying and has been compelled to pay the sum of about 20 cents per thousand cubic feet for gas, but that the billing of said gas to this plaintiff has been done either by or at the instance of the defendant O. G. & E., and the payments for all of such gas have been made by the plaintiff to defendant O. G. & E.

Plaintiff, further complaining, alleges that the Oklahoma Natural and the O. G. & E. seemed to have some sort of arrangement among themselves that the bills for such gas shall be made out by and payments for said gas made to the defendant O. G. & E. But the plaintiff avers in this connection that the defendant O. G. & E. performs no real or substantial service to or for this plaintiff; that there is no cost of distribution, for there is no distribution.

Plaintiff further says that the price which it is paying and is compelled to pay, as above set forth, for said fuel gas is exorbitant and unreasonable.

Plaintiff further says that it is informed and believes that defendant Oklahoma Natural is now and has been extending to industrial users of gas outside the limits of Oklahoma City prices and rates upon natural gas that are much less than those charged to this plaintiff, and that the same have been highly discriminatory as against this plaintiff.

On the 13th of April, 1926, the Corporation Commission made and entered its order No. 3388, directed against defendant Oklahoma Natural and the defendant O. G. & E., in which it was ordered and required that said defendant Oklahoma Natural permit plaintiff to connect a service line running from its plant some 150 yards from one of the main gas lines of defendant Oklahoma Natural to said main line, and that said Oklahoma Natural be required to supply said plaintiff with its supply of natural gas for fuel, at a rate of 35 cents per thousand cubic feet for the first 100,000 cubic feet and at 15 cents per thousand cubic feet for any remaining quantity consumed up to and including 15 million cubic feet consumption per month, provided that said rate should not apply to consumption of gas in quantities less than 15 million cubic feet for any one month.

The Corporation Commission at the time of the rendition of judgment and making the order complained of herein also made findings of facts, as follows, to wit:

"First: That the Oklahoma Natural Gas Company, a public utility, is engaged in the production and transportation of natural gas to various sections of the state of Oklahoma and supplying various towns and cities with such gas for both industrial and domestic consumption.

"Second: That it has obligated itself as a public utility to transport and to serve natural gas to all similarly situated, upon the same terms and conditions.

"Third: That said Oklahoma Natural Gas Company is admittedly supplying and furnishing industries of similar size or smaller, with gas at a rate of 35 cents for the first 100,000 cubic feet, and 15 cents for each additional one thousand cubic feet where gas is consumed in quantities of 15 million cubic feet or more per month.

"Fourth: That Wilson & Co., Inc., of Oklahoma, is consuming in excess of 15 million cubic feet per month and comes within

the classification of service which the gas company has voluntarily established.

"Fifth: That under the terms and purpose of the agreement entered into shortly after the promulgation of order No. 1886 establishing the gate rate, the Oklahoma Natural Gas Company, by that agreement, appears to have obligated itself to render service to those consumers adjacent to Oklahoma City which were theretofore served by the Oklahoma Gas & Electric Company.

"Sixth: That the Oklahoma Natural Gas Company is the owner at present of the pipe line leading from the measuring station or gate station, approximately 1,792 feet west of the point at which gas may be delivered to the packing plant.

"Seventh: That the packing plant owned and operated by Wilson & Co., Inc., of Oklahoma, is situated outside of the city limits of the city of Oklahoma City, and entirely beyond the city border, and that all of the property necessary to be devoted to the rendition of the service petitioned for is located entirely beyond the city limits of Oklahoma City and entirely beyond the city borders of Oklahoma City.

"Eighth: That applicant, Wilson & Co., of Oklahoma, was, at the time of the promulgation of order 1886, establishing the gate rate, and at the time of the agreement between the two gas companies wherein the Oklahoma Natural Gas Company agreed to render service to consumers outside of the city limits of Oklahoma City, operating its packing plant at its present location, and had theretofore from time to time been using natural gas as fuel, though not using same at the immediate time of said agreement.

"Ninth: That the Oklahoma Natural Gas Company, under the circumstances, should be required to supply applicant, Wilson & Co. Inc., of Oklahoma, with similar quantities of gas to that supplied other institutions located along its pipe line outside of incorporated cities upon the same terms and upon the same conditions, and that they are therefore obligated to serve applicant as petitioned for.

"Tenth: That Wilson Co., Inc., of Oklahoma, should be required to either take over and to purchase the line now used by the Oklahoma Gas & Electric Company and which is serving the boiler room of Wilson & Co., Inc., of Oklahoma, or should be permitted to construct its own service line extending from such boiler room to a connection upon the pipe line of the Oklahoma Natural Gas Company, adjacent to the plant.

"Eleventh: That such measuring devices as may be necessary to install at the point in order to allow this service to be rendered, should be installed. All of such devices as may be necessary for the purpose of rendering the service to the plant to be installed at the expense of applicant."

The Commission found from the evidence that the defendant Oklahoma Natural is now the owner of a 6-inch main pipe line extending 1,792 feet within said city gate and to the point at which the service under consideration is being demanded, and that the packing plant owned and operated by plaintiff is situated outside the city limits of Oklahoma City and entirely beyond the city borders, and that all of the property necessary to be devoted to the rendition of the service petitioned for is located entirely beyond the city limits of Oklahoma City and entirely beyond the city borders of Oklahoma City.

Based upon said findings of facts the Commission rendered the following judgment:

"It is therefore the order of the Commission, premises considered, that the Oklahoma Natural Gas Company be and it is hereby required to supply Wilson & Co., Inc., of Oklahoma, at its packing plant located in the angle created by the intersection of Ash st. and May avenue, southwest of the city of Oklahoma City, with natural gas for its use as fuel at said plant, at the rate of 35 cents per thousand for the first 100,000 cubic feet, and 15 cents per thousand for each additional one thousand cu. ft. thereafter, provided that this rate shall not apply to consumption of less than 15 million cu. ft. per month.

"This order is conditioned upon Wilson & Co., Inc., of Oklahoma either taking over and purchasing the present service line owned and operated by the Oklahoma Gas & Electric Company or the laying and installing of its own service line, with all measuring devices and facilities which may be necessary to be installed in rendering said service without expense to the Oklahoma Natural.

"It is the further order of the Commission that said connection be made and gas turned into the service line of said Wilson & Co., Inc., of Oklahoma within ten days from and after notice to said company of the completion of said service line and of the company's readiness of (to) accept service.

"Done at Oklahoma City this 13th day of April, 1926.

"Corporation Commission of Oklahoma."

The Corporation Commission of Oklahoma, in its order No. 1886, January 25, 1921, in the case of Oklahoma Natural Gas Co., Petitioner, v. Oklahoma Gas & Elec. Co. et. al., Cause No. 4023, said:

"The Oklahoma Gas & Electric Company owns the franchises and the distribution plants in the cities of Oklahoma City, El Reno, and Enid and in the towns of Yukon and Britton. The gas consumed in said towns and cities is produced or purchased by the Oklahoma Natural Gas Company and

is transported to said cities and towns by said company through its lines, and is delivered into the distributing lines of said Oklahoma Gas & Electric Company at the corporate limits of each of said cities and said towns, and is distributed to the inhabitants and industries thereof by said Oklahoma Gas & Electric Company under a contractual arrangement which has heretofore existed whereby said Oklahoma Gas & Electric Company obtains and receives one-third of all collections made for the gas sold for domestic purposes and one-fourth of all collections made for gas sold for industrial purposes, the other two-thirds of the collections made for gas used for domestic purposes and the other three-fourths of the collections made for gas used for industrial purposes being paid by the Oklahoma Gas & Electric Company to the petitioner, Oklahoma Natural Gas Company, for the gas furnished by said company. * * *

. "The Commission finds that the so-called percentage contracts alleged to exist between the petitioner, Oklahoma Natural Gas Company and the local distributing companies in Oklahoma City, El Reno, Yukon, Britton, Enid, Muskogee, Wagoner, Shawnee, and Guthrie, should be abrogated, and that the natural gas should be furnished to those distributing companies by the Oklahoma Natural. Gas Company and to all other distributing companies served by the Oklahoma Natural, under the latter's legal obligation as a public service corporation at fixed rates per thousand cubic feet measured at the gates or borders of said cities and towns, instead of under said percentage contracts. * * *

"The Commission therefore finds that the so-called percentage contracts in their relation to and effect upon the Oklahoma Natural Gas Company are unconscionable and oppressive, and have the effect of impairing the ability of the Oklahoma Natural Gas Company to discharge adequately and efficiently its duty to the public, and that if the same should be continued in effect the ultimate result would be to render the Oklahoma Natural Gas Company unable to serve at all. * * *

"For the reasons hereinbefore stated the Commission finds that the present arrangements whereby gas is furnished to the local distributing companies above named by the Oklahoma Natural Gas Company for a certain percentage of the amount collected by the distributing companies are unconscionable, burdensome and oppressive to the Oklahoma Natural Gas Company and impair its ability to serve the public efficiently. * * *"

"Upon a consideration of all the facts and circumstances, the Commission hereby establishes a city gate rate to be charged by the Oklahoma Natural Gas Company to every local distributing system to which it furnishes gas, and to be charged by the Okla-

homa Natural Gas Company for gas at the city gates to each and every distributing system owned by the Oklahoma Natural Gas Company itself. Each and every distributing company which shall take gas from the Oklahoma Natural Gas Company, including both the independent distributing companies and those owned by the Oklahoma Natural Gas Company itself, shall receive and accept gas from the Oklahoma Natural Gas Company at the borders or boundaries of each town and city, and shall pay for the full amount of gas measured into the distributing system at the borders or boundaries of each town and city.

"It has heretofore been the policy of this Commission, based upon what seems to it to be sound business policy, to segregate and divorce field operation of gas companies in the state of Oklahoma, from the distributing systems where the company is engaged in the business of both producing and distributing gas. In making this order, it in no wise departs from that policy and orders the Oklahoma Natural Gas Company to keep its records with reference to field operations and production separate and distinct from the records and accounts of the distributing end of the business to the end that the Commission may at any time ascertain the relations which exist between the two departments of its business. * * *

"The said city gate rate is hereby fixed at the sum of 25 cents net per thousand cubic feet, to be measured at the borders or boundaries of each town and city; provided, however, that for the gas bought by the distributing companies and by them sold to patrons or customers using more than 500,000 cubic feet each month, the distributing companies shall pay to the Okla. Natural Gas Company only the sum of 20 cents net per thousand cubic feet for the gas used by each consumer of each distributing company in excess of 500,000 cubic feet per month. * * *

"The amount of gas actually used by each patron over and above 500,000 cubic feet each month shall be paid for by each distributing company to the Oklahoma Natural Gas Company at the rate of 20 cents net per thousand cubic feet. All the remainder of the gas measured by the Oklahoma Natural Gas Company into the lines of the distributing companies shall be paid for by the distributing companies to the Oklahoma Natural Gas Company monthly at the rate of 25 cents net per thousand cubic feet. This reduction in the price of gas furnished by the distributing companies to large users is made to enable the distributing companies to make a lower rate for industrial gas; but there is no reduction as to the first 500,000 cubic feet purchased for each such user, the reduction being only on the quantity used by each such user in excess of 500,000 cubic feet in one month. * * *

"All bills shall be payable to the Okla-

homa Natural Gas Company by the distributing companies on or before the 15th day of the month following that in which the gas was used."

The plaintiff brings action against both of these defendants, and alleges that under some arrangement or agreement between the defendants themselves they are supplying this plaintiff with natural gas, and that the price charged this plaintiff by these defendants is 5 cents per thousand cubic feet in excess of the legal rate fixed by the Commission to plaintiff in the order complained of, and 5 cents per thousand cubic feet higher than other consumers in its class are required to pay.

### Assignment of Errors.

Defendants have assigned 15 different errors. Both have wisely suggested and have combined and presented said errors under two heads, viz.:

"(1) The order of the Commission is not supported by the evidence, and is contrary to law.

"(2) Said order is violative of section 7, art. 2, of the Constitution of Oklahoma, and of the Fourteenth Amendment to the Constitution of the United States."

Defendants aver in their first assignment of error:

"That the order of the Commission is not supported by the evidence."

We think, after a careful study of the evidence and the findings of facts by the Commission as set out above, the evidence is quite sufficient to sustain said findings, and to warrant the Commission in making the order complained of, and that any further discussion as to the sufficiency of the evidence is unnecessary.

In the case of St. Louis & S. F. R. Co. v. Williams, 25 Okla. 662, 107 Pac. 428, this court held:

"Under Constitution, art. 9, sec. 22, providing a prima facie presumption in favor of findings of fact of the Corporation Commission, such findings will not be disturbed by the Supreme Court when supported by evidence."

It will be observed (except as to the facts) that the two errors assigned both relate to the law of the case, and may be discussed under two heads, namely:

"(1) Is the Corporation Commission clothed with power to make the order complained of?

"(2) Is the order made violative of section 7, art. 2 of the Constitution of Oklahoma, and to the Fourteenth Amendment to the Constitution of the United States?"

We deem it very necessary and proper to discuss the relative positions of each defendant to the plaintiff separately, and will, therefore, discuss first the contentions of the defendant Oklahoma Natural.

The defendant Oklahoma Natural contends that the order of the Commission requiring it to supply plaintiff with gas is "contrary to law."

Article 9, sec. 15, Constitution of Oklahoma, provides:

"A Corporation Commission is hereby created to be composed of three persons. * * *"

Article 9, sec. 18, Constitution of Oklahoma, provides:

"The Corporation Commission shall have power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies, * * * and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just. * * * All rates, charges, classifications, rules and regulations adopted or acted upon by any such company (corporation) inconsistent with those prescribed by the Commission within the scope of its authority shall be unlawful and void." (Parenthesis ours.)

The Legislature of this state, by an act approved March 25, 1913, Laws 1913, c. 93, extended the powers of the Corporation Commission to include all public utilities.

Section 3462, C. O. S. 1921, provides:

"The term 'public utility,' as used in this act, shall be taken to mean and include every corporation, association, company, individuals, their trustees, lessees, or receivers, successors or assigns, except cities, towns, or other bodies politic, that now or hereafter may own, operate, or manage any plant or equipment, or any part thereof, directly or indirectly, for public use, or may supply any commodity to be furnished to the public,

"(a) For the conveyance of gas by pipe line.

"(b) For the production, transmission, delivery, or furnishing of heat or light with gas."

A corporation organized for the purpose of or engaged in the transportation or transmission of natural gas within this state is a public corporation (public utility) and must

obtain a charter from the state (or franchise from the city) before it can lawfully engage in the transportation, transmission, or distribution of natural gas to consumers.

Section 7889, C. O. S. 1921, provides:

"Any firm, copartnership, association, or combination of individuals may become a body corporate under the laws of this state for the purpose of producing, transmitting, or transporting natural gas to points within this state by complying with the general corporation laws of the state of Oklahoma, and with this article."

State laws are designed to furnish a rule of conduct operating alike on all persons to whom they are intended to apply throughout the limits of the state. Such laws are sometimes local or special in their character, and apply only to designated portions of its territory. 3 McQuillin, Municipal Corporations, sec. 921.

The fundamental distinction between state laws and municipal ordinances is that state laws are designed to meet demands, exigencies, and conditions which concern all of the people of the state, while ordinances are enacted and enforced for the benefit of the inhabitants of the local community. The purpose of the former is to control state affairs and of the latter to deal with municipal matters.

The Oklahoma Natural filed its amended articles of incorporation with the Secretary of State of Oklahoma, July 24, 1917, and at said time was granted a charter or certificate to do business in this state.

The powers granted said company enumerated in its articles of incorporation which are relevant in the instant case are as follows:

"To acquire by purchase, lease or otherwise, natural gas, oil or other minerals in lands situated in Oklahoma and elsewhere in other states.

"To build, construct, maintain and operate one or more pipe lines through which to convey natural gas and oil from the gas and oil fields of Oklahoma and other states to Oklahoma City, Shawnee, Guthrie, Enid, and to and from any other towns in Oklahoma or in any other state.

"To engage generally in the business of supplying the cities above described and the inhabitants thereof and the people of Oklahoma generally and the people of other states with natural or artificial gas and with electric current for lighting, heat and power.

"To buy and sell natural gas, oil and other minerals.

"For the purposes aforesaid said company shall have the power to acquire, buy, sell, own and operate property of every kind and character incidental to the pursuit and operation of all the businesses above described."

In the case of Oklahoma Natural Gas Co. v. Corporation Commission, 88 Okla. 51, 211 Pac. 401, the court held:

"Where a public utility has undertaken and professes to serve the inhabitants of certain cities and towns within the state with natural gas, the Corporation Commission has power within constitutional and reasonable limitations to compel such utility to serve all inhabitants thereof who may apply for such service"

The defendant Oklahoma Natural is a public service corporation (public utility) engaged in the business of furnishing natural gas to many cities and consumers in this state, including Oklahoma City.

The authorities are harmonious in holding that one enters the public utility business by professing or undertaking to serve the public; and that the public obligation is limited by the extent of its profession.

In Wyman, Public Service Corporations, vol. 1, sec. 250, it is said:

"Public profession not only establishes public obligation, but it largely determines the extent of the public duty. * * *"

Query:

"What has the defendant Oklahoma Natural, as a public utility, professed to do, and what is its public duty under the facts and circumstances in this case?"

A determination of these facts will not only establish the business relations of this defendant Oklahoma Natural with this plaintiff, but will also determine its obligations and duty to the plaintiff herein.

A careful study of the evidence in the case, together with the findings of the essential facts by the Commission above, clearly establishes the conclusion that defendant Oklahoma Natural not only professes, but has confessed, that it is a public utility and has undertaken and does supply natural gas to consumers residing without the city limits of Oklahoma City, and that the gas now being furnished to plaintiff by defendant O. G. & E. is carried through defendant Oklahoma Natural's pipe line.

We may, therefore, conclude that the defendant Oklahoma Natural, as a public utility, has undertaken and does furnish natural gas to consumers located outside the city limits of Oklahoma City and that any further discussion of the evidence in support of the above proposition is unnecessary.

The Commission found, and we hold, that the Oklahoma Natural has undertaken to serve the inhabitants of certain cities, towns, and communities within the state, including persons residing in the territory adjacent to Oklahoma City, and to them it owes the duty of furnishing adequate service and may be required within reasonable limitations to serve all inhabitants thereof who may apply. Oklahoma G. & E. Co. v. State, 87 Okla. 174, 209 Pac. 777; New York & Queens Gas Co. v. McCall, 245 U. S. 345, 62 L. Ed. 337; Lukrawaka v. Spring Valley Water Co. (Cal.) 146 Pac. 640; Public Service Corp. v. Amer. Light Co. (N. J.) 57 Atl. 482; Zeilda Forsee Inv. Co. v. St. Joseph Gas Co. (Mo.) 195 S. W. 52; Minn. Gen. Elec. Co. v. City of Minneapolis (Minn.) 194 Fed. 215; Wyman on Public Service Corporations, sec. 797.

### Jurisdiction of the Corporation Commission to Fix Rates.

The record shows that prior to July 1, 1921, these defendants were selling and delivering gas to consumers residing within and without the city limits of Oklahoma City under what is known as the percentage contract.

On July 1, 1921, the Commission entered its order No. 1886, abrogating the percentage contract plan, and in lieu thereof established the "gate rate plan," which specifically provides:

"That each distributing plant shall purchase their natural gas at the city gates."

Section 3463, O. O. S. 1921, clothes the Corporation Commission with power to fix and establish rates. Said section provides to wit:

"The Commission shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe rules, requirements and regulations, affecting their service, operation, and the management and conduct of their business; shall inquire into the management of the business thereof, and the method in which same is conducted. It shall have full visitorial and inquisitorial power to examine such public utilities, and keep informed as to their general conditions, their capitalization, rates, plants, equipments, apparatus, and other property owned, leased, controlled, or operated, the value of same, the management, conduct, operation, practices and services; not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this act, with the Constitution and laws of this state, and with the orders of the Commission."

In the case of Public Ser. Corp. v. Amer. Light Co. (N. J.) 57 Atl. 482, the court held:

"Corporations enjoying a gas franchise and the complete or partial monopoly resulting therefrom, are bound to serve the public upon reasonable terms and at reasonable rates, and are similarly entitled to reasonable dealing from the public."

The Corporation Commission, in its order of April 13, 1926, said:

"It also is shown that the Oklahoma Natural Gas Co., at the present time is rendering services to large industrial users of gas adjacent to other towns served by it, * * * at a rate of 35 cents for the first 100,000 cu. ft. and 15 cents per 1,000 cu. ft., for all the excess thereof, where the consumption amounts to 15 million cu. ft. per month. * * * That plaintiff is similarly situated to such consumers as are enjoying this favorable rate and consumes more gas per month than is required to be consumed in order to enjoy such a reduced rate; that it should also be served directly from the lines of the Oklahoma Natural Gas Company at a similar rate."

Plaintiff alleges, and the Commission so found, that the plaintiff is now and has been for some years past supplied with fuel gas from the lines and mains of the defendant Oklahoma Natural, as heretofore described, and for said services the plaintiff has been paying and has been compelled to pay the sum of 20 cents per 1,000 cubic feet for gas.

The Commission found that the defendant Oklahoma Natural is furnishing consumers of gas similarly situated to the plaintiff at 35 cents per thousand cubic feet for the first 100,000 cubic feet and 15 cents per 1,000 cubic feet for each additional 1,000 cubic feet thereafter, provided that this rate should not apply to consumption of less than 15 million cubic feet of gas per month.

The Commission, in its order of April 13, 1926, said:

"It is therefore the order of the Commission, premises considered, that the Oklahoma Natural Gas Company, be and it is hereby required to supply Wilson & Co., Inc., of Oklahoma, at its packing plant located in the angle created by the intersection of Ash street and May avenue, southwest of the city of Oklahoma City, with natural gas for its use as fuel at said plant, at the rate of 35 cents per thousand for the first 100,000 cubic feet and 15 cents per thousand for each additional one thousand cubic feet thereafter, provided that this rate shall not apply to consumption of less than 15 million cubic feet per month."

This defendant Oklahoma Natural, in its sixth assignment of error, contends that:

"Said order of the Corporation Commission is arbitrary, unreasonable, and constitutes an abuse of authority."

Article 9, sec. 18, Constitution of Oklahoma, provides:

"The Corporation Commission shall have power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state in all matters relating to the performance of their public duties and their charges therefor and of correcting abuses and preventing unjust discrimination and extortion by such companies. * * *"

The Legislature of this state, by an act approved March 25, 1913, extended the powers of the Commission to include all public utilities, as heretofore stated in this opinion.

In the case of K. C., M. & O. Ry. v. State, 25 Okla. 715, 107 Pac. 912, the court said:

"All actions of the Corporation Commission appealed from having been made by the Constitution prima facie just, reasonable, and correct, the Supreme Court, when called upon to review such actions, will ascribe to the findings of the Commission the strength due to the judgments of a tribunal of law and informed by experience. And in any special case of conflicting evidence, a probative force must be attributed to the findings of the Commission, which, in addition to knowledge of conditions, of environment, and of transportation relations, has had the witnesses before it and has been able to judge of them and their manner of testifying.

"On appeal from an order of the Corporation Commission, the presumption obtains, by reason of section 22, art. 9, of the Constitution, that the order is reasonable, just and correct, and he who complains on appeal of such order has upon him the burden of establishing the unreasonableness, unjustness or incorrectness of such order, which he may do by showing that the unreasonableness of the order appears affirmatively from the facts as certified by the Commission, or that it is shown by the evidence in the record upon which the Commission failed to make findings of fact or upon which the Commission erroneously found the facts."

Keeping in mind the above provisions of law, we find it incumbent on the court to review the findings of fact and conclusions of law based thereon.

The court finds and holds: That the defendant Oklahoma Natural is authorized and does, by virtue of its charter powers, furnish natural gas to consumers residing within and adjacent to Oklahoma City, including domestic, industrial, and distributing patrons, and, under the law and facts and circumstances as shown by this record, this defendant, Oklahoma Natural, is legally obligated to furnish this plaintiff with fuel gas. And, in fact and in law, this defendant is under a legal obligation to supply any and all applicants desiring gas service who are similarly situated to this plaintiff.

That the Oklahoma Natural owns and operates gas pipe lines from many producing gas wells in the state to the Oklahoma City measuring gate.

That all the gas used by consumers in and around and adjacent to said city is transported through the pipe lines of said defendant and measured at said city gate.

That the plaintiff is situated about 2,000 feet outside the city limits of Oklahoma City in the neighborhood and not far distant from other consumers of gas to whom this defendant is supplying gas.

That said defendant, Oklahoma Natural, has undertaken and does supply natural gas to consumers residing outside the city limits of Oklahoma City.

That this defendant is furnishing natural gas to consumers outside the city limits similarly situated as this plaintiff at a lesser rate than this plaintiff is required to pay.

That at the time of the establishment of the gate rate these defendants entered into a mutual agreement by the terms of which the defendant Oklahoma Natural agreed to take over the property and gas patrons of the defendant O. G. & E. residing outside the city limits of Oklahoma City, and the O. G. & E. agreed to take over the property and patrons of the Oklahoma Natural residing within the city limits of Oklahoma City.

That this plaintiff, who resides outside the city limits, is now being supplied with gas by defendant O. G. & E. and said gas is being transported through the pipe lines of defendant Oklahoma Natural.

That this plaintiff is paying 20 cents per 1,000 cubic feet for all gas consumed by it over and above 100,000 cubic feet.

That this plaintiff is using more than 15 million cubic feet of gas per month.

That this plaintiff is paying 5 cents per month per 1,000 cubic feet more than other consumers of natural gas similarly situated.

That the defendant Oklahoma Natural is a public service corporation, and as such is legally obligated to render equitable service to its patrons and to those similarly situated, who may apply for service.

That the rate which this plaintiff is required to pay for gas is 5 cents per 1,000 cubic feet in excess of the rate fixed by the Commission for consumers using 15 million cubic feet of gas per month, who are similarly located to this plaintiff.

It, therefore, follows, and the court holds, that a refusal on the part of defendant Oklahoma Natural to supply this plaintiff with fuel gas, under the facts and circumstances as shown by the record, would be discriminatory and oppressive and would impair its legal obligation to the public generally, in the discharge of its public duty to the public, but more particularly to this plaintiff.

### Due Process of Law.

The defendant Oklahoma Natural, for its second and last assignment of error, says:

"That under the facts and circumstances the order is violative of section 7, art. 2, Constitution of Oklahoma, and of the 14th Amendment of the Constitution of the United States, in that the same is arbitrary, unreasonable, and deprives the company of its property without due process of law."

The contention of defendant Oklahoma Natural that the order of the Commission in the present case has deprived it of property without due process of law is not well taken.

By "due process of law" is meant an orderly proceeding, adapted to the nature of the case, before a tribunal having jurisdiction, which proceeds upon notice, with an opportunity to be heard, with full power to grant relief. Wilhite v. Cruce, 70 Okla. 70, 172 Pac. 962; Pryor v. Western Paving Co., 74 Okla. 308, 184 Pac. 88; Caldwell v. Texas, 137 U. S. 692, 34 L. Ed. 816; Kennard v. Louisiana, 92 U. S. 480, 23 L. Ed. 478; 6 R. C. L. 434.

One of the most often quoted definitions of "due process of law" is that of Daniel Webster in his argument in the famous Dartmouth College Case (4 Wheat. 518, 4 L. Ed. 629), in which he declared that by "due process of law" is meant:

"A law which hears before it condemns which proceeds upon inquiry, and renders judgment only after trial."

The essential elements of due process of law are:

(1) Notice.

(2) An opportunity to be heard.

(3) An opportunity to defend.

(4) An orderly proceeding adapted to the nature of the case.

The order of the Commission in the present case cannot be said to be a taking of property without due process of law. Hearing was had before a legally constituted tribunal. Notice, an opportunity to be heard, an opportunity to defend, and all the proceedings leading up to and including the hearing were regular and denied appellant none of the rights constituting due process of law, and appeal has been taken to a court authorized by law to review the proceedings and findings of the Commission.

The judgment of the Corporation Commission, in so far as it relates to the defendant Oklahoma Natural Gas Company, is affirmed.

### Defendant O. G. & E. Co.

Before discussing the law which we think applicable to the contention of defendant O. G. & E., we first call attention to the fact that the Corporation Commission made no order whatsoever against the O. G. & E. It is true, however, the order made by the Commission holding and directing the defendant Oklahoma Natural to furnish plaintiff with gas does deprive defendant O. G. & E. of the right to furnish plaintiff with gas, and we presume that is the sole reason why the defendant O. G. & E. objects to the order.

The Legislature of Oklahoma in 1913 extended the jurisdiction of the Corporation Commission over heat, light, and power companies and gave the Commission general supervision over such utilities.

The defendant O. G. & E. is a "public utility" (sec. 3462, C. O. S. 1921, supra), and is, therefore, subject to the control and supervision of the Corporation Commission. (Article 9, sec. 18, Const. of Oklahoma, supra.)

Having heretofore discussed the constitutional and extended legislative powers of the Corporation Commission, we will not repeat.

This defendant, O. G. & E., as did its codefendant, Oklahoma Natural, contends and alleges that the judgment of the Commission is "contrary to law." But it cites no law in support of its contention that the Commission is unauthorized to make the order complained of or that said order is "contrary to law." We think it hardly probable, under the facts and circumstances in the instant case, that this defendant will contend it has the right under its charter power to furnish this plaintiff with gas.

This defendant was granted a charter with enumerated powers. The essential relative powers granted this defendant are as follows (Amended articles of incorporation of O. G. & E. Co.):

"Second: That the purposes for which this corporation is formed are:

"To manufacture, distribute and sell gas for light, heat and power.

"To construct, purchase, lease, operate and maintain gas and electric plants, buildings, constructions, machinery, appliances, equipment, easements and appurtenances for the manufacture and distribution and the generation and distribution of gas and electricity, for light, heat and power.

"To contract with cities, towns, and other municipalities and with persons, firms and corporations, for the supply of light, heat and power."

It may be conceded that this defendant has the right under its charter powers to construct, own, lease, and operate gas pipe lines from gas wells to the territory adjacent to Oklahoma City, through which it could transport natural gas and sell the same to consumers residing in said territory.

But, in so far as relates to the instant case, this record does not disclose a single effort or fact tending to show the exercise of its charter powers, except that of a purely distributing concern operating in cities and towns, and more particularly in Oklahoma City.

This defendant makes no claim, nor does the record show, that it has ever constructed, leased, owned, or operated, or that it now leases, owns, or operates, any gas pipe line connected with gas wells leading from said wells to the territory adjacent to Oklahoma City through which it is transporting natural gas to consumers residing in said territory.

This defendant makes no claim, nor does the record show, that it owns, maintains, or operates any gas wells or manufacturing gas plants from which it supplies this plaintiff with natural gas; nor, to any person similarly situated to this plaintiff.

This defendant admits that all the gas used by the plaintiff is transported through pipe lines owned by its codefendant, Oklahoma Natural, except a short supply line extending from the main line of the Oklahoma Natural to plaintiff's packing plant.

The record shows conclusively that these defendants are still supplying plaintiff with natural gas; that the rate charged this plaintiff by these defendants is 5 cents per 1,000 cubic feet in excess of the rate fixed by the Commission in the order complained of, and 5 cents per 1,000 cubic feet higher than gas is being furnished to consumers similarly situated to this plaintiff by defendant Oklahoma Natural.

This defendant makes no pretention under its charter powers to supply gas to consumers who reside outside of and adjacent to Oklahoma City, except to this plaintiff.

In fact it is not operating as a producing or transporting company in so far as relates to the merits in the instant case. But is extensively engaged in distributing natural gas to consumers residing in different cities and towns, including Oklahoma City. And for that reason it cannot be said that this defendant has undertaken to furnish gas to consumers residing outside the city limits. And, in fact, it is questionable whether or not the Corporation Commission could require this defendant under its charter powers to supply plaintiff with gas if it should choose not to do so.

This defendant in its brief (pg. 38) admits and contends:

"As far as Oklahoma City is concerned, the Oklahoma Natural Gas Company has never occupied any position other than as a transporter of gas from the fields to deliver the same to the Oklahoma Gas & Electric Company."

And further says (brief pg. 39):

"The Oklahoma Gas & Electric Company is engaged only in the distribution of gas to consumers and does not produce any gas or transport the same except in its distribution system to such consumers."

This argument is directly in accord with the acts and rulings of the Commission and in no wise can it be construed to mean that the order of the Commission requiring the defendant Oklahoma Natural to supply plaintiff with gas is "contrary to law."

It cannot be denied that the admissions made by this defendant are binding upon it. So, when it clearly appears from the evidence and the admissions of this defendant that it is not engaged in the business of transporting gas from natural gas wells in the state to consumers of gas residing in and around Oklahoma City, this defendant should not be heard to say that the Commission in making the order complained of overlooked or misapprehended the facts in the case.

Surely, this defendant will not contend that under the facts and circumstances in this case, the Corporation Commission had power to compel it to furnish the plaintiff with fuel gas?

The Commission found from the evidence, and so held, that this plaintiff was being discriminated against. That these defendants, acting under some unexplained arrangement between themselves, were supplying this

plaintiff with gas at a rate in excess of the rate fixed by the Commission in the order complained of, and in excess of the rate being furnished to consumers similarly situated to this plaintiff, and was so doing in violation of the law of the state.

The Commission having found that the defendant Oklahoma Natural was engaged in the business of producing natural gas and transporting the same by means of pipe lines from various producing gas wells in the state to many cities and towns, including Oklahoma City and territory surrounding said city, and the Commission having further found that the defendant O. G. & E. was not engaged in the business of transporting gas from natural gas wells in the state to consumers of gas residing in and around Oklahoma City, nor engaged in the business of producing natural gas, and does not own pipe lines through which natural gas is transported from various gas wells in the state to Oklahoma City, or to the territory surrounding said city, we think the Commission very wisely ordered the Oklahoma Natural to supply plaintiff herein with natural gas, and that said order complained of is not contrary to law and the facts in this case.

Having found and concluded that this defendant, O. G. & E., in fact, is not operating under its charter powers in supplying this plaintiff with fuel gas, the natural query would be:

"Under what power or authority is this defendant operating?"

The record shows this defendant O. G. & E. is operating under a franchise (ordinance No. 1119 granted by the city of Oklahoma City) with power to distribute natural gas to consumers residing within the limits of said city.

The record also shows that this defendant is supplying large quantities of fuel gas to the plaintiff, who is located, 1,792 feet outside the city limits.

The record further shows that the franchise under which the defendant O. G. & E. supplies gas to consumers residing within the city limits also contains a provision by the terms of which the defendant O. G. & E. is permitted, "if it so desires," to supply consumers who reside outside the city limits.

Keeping in mind the above facts, it may be this defendant is laboring under the impression that it has the right to continue supplying plaintiff with gas under its franchise.

The word "franchise" is generally used to designate a right or privilege conferred by law. To be a "franchise," the right possessed must be such as cannot be exercised without the express permission of the sovereign power. It is the privilege of doing that which does not belong to the citizens of the country generally by common right.

It is well settled that a municipal corporation can exercise no power not clearly delegated in the act of incorporation or arising by necessary implication out of some delegated power. Angell & Ames on Corp., 97.

In Wyman on Public Service Corps. vol. 1, pg. 242 et seq., in commenting upon territorial limits fixed by franchise limiting the territory to be served by the public utility, the author says:

"In various important public services the obligation undertaken is to serve the community in general. It is obvious that this problem may be dealt with from two general points of view. One side is the exterior limitations beyond which the service need not be rendered; the other regards the obligation to render service within these limits. * * * In the first place it is necessary to determine the exterior limits of the territory served. Usually this will be settled either by the extent of the powers of the company given in its charter or by the limits of the franchise granted. For a public service company cannot be required to act ultra vires by serving outside the territory described in its charter, nor can it be asked to act illegally by going into territory to which its franchise does not extend. This problem almost invariably reduces itself to a question of construction. * * *"

In the instant case, under ordinance No. 1119, the city of Oklahoma City granted to the defendant O. G. & E., its successors and assigns, the right to acquire, construct, maintain, and operate a system of works in the city of Oklahoma City for the purpose of distributing and selling natural gas and manufactured gas to said city and the public generally.

Section 12 of said franchise, dealing specifically with the territorial limits covered by the same, provides:

"The mayor and council and their successors shall at all times have power to impose all needful and reasonable regulations for the protection of the interest of the inhabitants of said city, and among other things shall have the power, after full hearing, to require extensions of service where it can be done without financial loss to the grantee. The grantee may, if it desires, extend its distributing system into any communities or territory outside the limits of said city, and may supply the inhabitants of such com-

munities or territory with gas from said system, maintained and operated hereunder."

It will be observed that the last paragraph of section 12 of said franchise provides:

"The grantee may, if it desires extend its distributing system into any communities or territory outside the limits of said city, and may supply the inhabitants of such communities or territory with gas from said system, maintained and operated hereunder."

The charter of the city of Oklahoma City does not, directly or by necessary implication, confer upon the municipal corporation (the city of Oklahoma City) the power to grant to a public utility, by ordinance or franchise, the right to serve the public beyond the city limits. Such a grant, although not authorized, if in fact made, amounts to nothing more than a mere gratuity and carries with it no binding legal rights or duties.

An ordinance, therefore, not warranted by the charter is void, and can furnish no justification to persons acting under its authority. 43 C. J. 189; Sedwick on Stat. and Const. Law, pp. 466, 468; Welch v. Stonewell, 2 Doug. (Mich.) 332; Miller v. Burch, 32 Tex. 208, 210, 5 Am. Rep. 242.

"Corporations are recognized as creatures of the law, and they owe obedience thereto, and when they fail to perform duties which they were created to discharge, or where they do unauthorized acts, the state has the right to wrest its franchise from the offending corporations." 14a C. J. sec. 3687; Hadley v. Standard Oil Co., 218 Mo. 1, 116 S. W. 902.

The fundamental fact in public employment is the public duty which results in all cases from public profession of a public calling. Wyman on Corporations, sec. 330, vol. 1.

The production and distribution of natural gas is a business of a public nature, the control of which belongs to the state.

This court is therefore of the opinion that the last paragraph of section 12 of said franchise (ordinance No. 1119), in so far as it attempts to confer upon the defendant O. G. & E. the right to supply fuel gas to consumers beyond the city limits, is null and void, and confers no power whatsoever upon the defendant O. G. & E., to supply fuel gas to the plaintiff herein.

This defendant in its fourth and last assignment of error says:

"Even if the Corporation Commission had authority to order the Oklahoma Natural Company to supply gas to Wilson & Company, it is unreasonable for such an order to be made as against the Oklahoma Gas & Electric Company for the reason that the Oklahoma Gas & Electric Company is now supplying gas to said Wilson & Company."

This defendant contends that the order of the Commission requiring its codefendant, Oklahoma Natural, to supply the plaintiff herein with fuel gas "is unreasonable," "for the reason this defendant is now supplying gas to the plaintiff herein."

This defendant virtually concedes the power of the Commission to make the order complained of, but the court having discussed and held that the Commission is clothed with power to make the order, it will be unnecessary to repeat the same.

Is the order unreasonable?

It should not be forgotten that the plaintiff brought its action against these two defendants, and alleges they are supplying it with fuel gas; that they are charging it 5 cents per 1,000 cubic feet more for gas than the legal rate fixed by the Commission to consumers in its class.

The record shows that these defendants have been supplying this plaintiff with gas for many years under what was known as the "percentage contract." That on January 25, 1921, the Commission by order (No. 1886) abrogated the percentage contract and established in lieu thereof what is called the "gate rate":

"The said city gate rate is hereby fixed at the sum of 25 cents net per thousand cubic feet, to be measured at the borders or boundaries of each town and city; provided, however, that for the gas bought by the distributing companies and by them sold to patrons or customers using more than 500,-000 cubic feet each month, the distributing companies shall pay to the Oklahoma Natural only the sum of twenty cents net per thousand cubic feet for the gas used by each consumer of each distributing company in excess of 500,000 cubic feet per month."

The Corporation Commission of Oklahoma, in its order No. 1886 of June 25, 1921, abrogated the percentage contract existing between the petitioner and the local distributing companies, and did establish a city gate rate, at which rate the local distributing company should pay for the gas at the city gates in lieu of the arrangements existing under the so-called percentage contracts, and that natural gas should be furnished to those distributing companies served by the Oklahoma Natural, under the latter's legal obligation as a public service corporation at fixed rates per 1,000 cubic feet measured at the gates or boundaries of said cities and towns.

The order No. 1886 provided:

First: Did establish a measuring gate outside the city limits.

Second: That each distributing company shall pay for gas at the city gate in lieu of the so-called percentage contract.

Third: That the gas should be furnished to the distributing companies by the Oklahoma Natural Gas Company under the latter's legal obligation as a public corporation at fixed rate per 1,000 cubic feet.

At the time said order (No. 1886) was made, these defendants recognized and acknowledged the same, and in pursuance therewith they agreed between themselves and with the Commission that they would conform thereto and abide thereby.

This defendant O. G. & E., in its reply brief, pg. 18, claims the agreement to be as follows, to wit:

"The undisputed evidence was that the two companies verbally agreed that as the Oklahoma Natural Gas Company had certain property which would be within the city gate and the O. G. & E. had certain property which would be outside the city gate, that the O. G. & E. Company was given the option of taking over and purchasing from the Oklahoma Natural such of the property within the city gate as it desired to take over, and the Oklahoma Natural was given the option to take over such of the property of the O. G. & E. outside the city gate as it desired to take over."

The Corporation Commission in rendering judgment said:

"At the time of the promulgation of said order, it appears from the evidence that the Oklahoma Gas & Electric Company was serving a number of consumers of natural gas outside the city limits of Oklahoma City, * * * it also appears however that the Oklahoma Natural owned and operated some gas property located within the city limits of the city of Oklahoma City. Shortly after the promulgation of the order establishing the gate rate the two gas companies entered into an agreement by the terms of which the Oklahoma Natural Gas Company took over and agreed to serve patrons living outside the city limits and theretofore served by the Oklahoma Gas & Electric Company."

And the O. G. & E. agreed to take over and serve patrons residing within the city limits and theretofore served by the Oklahoma Natural Gas Company.

During the trial of this case a lengthy and very persistent contention arose as to the exact wording and meaning of the agreement. The contention arose on the use of the terms "city limits" and "city gates."

This defendant O. G. & E., in its brief, pg. 56, further says:

"This agreement was a matter of public record, and is still such matter of public record in the office of the Corporation Commission, where it has lain for more than five years as express notice to the general public including Wilson & Company, and in which Wilson & Company has acquiesced for all of this time."

We have diligently searched the entire record and do not find that the agreement was ever introduced in evidence. The Commission informs us that it is not on file in the office of the Corporation Commission and they have no record of the same. The court is, therefore, compelled to rely upon the record facts and circumstances as to the real meaning of the agreement or as to the language of said agreement.

The Commission claims that the adjustment of certain property rights and the serving of certain gas patrons as provided for in said agreement was confined solely to the territory embraced within the "city limits." The defendants contend that said agreement included all the territory within the "city gate."

We think the agreement, whatever the exact language may be, carries with it no legal significance. It is our opinion the agreement is not binding upon the Commission nor this court. In fact we would not discuss it at all but for the fact it is the contention of these defendants that the order complained of is unreasonable, and does bring into question the limits of the territory to be served.

The court does not feel warranted in giving space to a review of the entire testimony relating to the territory to be included as expressed in the purported agreement.

Mr. R. C. Sharp, vice president of the defendant Oklahoma Natural, called as a witness in behalf of these defendants, testified as follows, to wit:

"Q. Mr. Sharp, I wish you would tell the Commission what you know about an understanding and agreement that was had between the Oklahoma Gas & Electric Company, and the Oklahoma Natural Company, at the time of the promulgation of the gate rate with regard to the Oklahoma Natural Gas Company taking over and serving the customers of the Oklahoma Gas & Electric Company outside of the city. Commissioner Carter: Have you that agreement? A. No. That was an understanding, Mr. Carter. Q. No written agreement in existence? A. I would not say for sure about that. At the time the city gate rate went into effect the understanding was it was to be the same outside the city as in the city. Q. I asked you,

Mr. Sharp, for the understanding—what it was, and if that understanding was reduced to writing to the effect that after the promulgation of the gate rate that the Oklahoma Natural should take over and serve those customers outside of the city that the Oklahoma Gas & Electric Company had theretofore been serving. A. Judge, I don't know if we had it in writing or not. We had the option to take them over. (C.-M. 26-27.) * * * Q. It was to be reduced to writing? A. I don't remember that it was. There has never been any dispute about it. Q. But that was the arrangement by which you took over their rights? A. We took over some of theirs and they took over some of ours inside the city. (C.-M. 27.) * * * Mr. Cochran: Mr. Bennett, it is my understanding there never was any contract. (C.-M. 29.) * * * Mr. Sharp: I don't remember it being reduced to writing. I don't know why it should have been. We would take their word for that and they would take ours. (C.-M. 30.) * * * Q. Don't you know it was found by the Commission and the Supreme Court that an arrangement had been made and entered into between the O. G. & E. Co. and the Oklahoma Natural whereby the Oklahoma Natural was to take over the customers of the O. G. & E. Co., at the time of the promulgation of the gate rate order? A. That was the understanding. (C.-M. 32.) * * * Commissioner Capshaw: I thought you said city limits. Mr. Rainey: We have just hundreds of consumers beyond the city limits. (C.-M. 42.) * * * Q. I will ask you to state whether the O. G. & E. is engaged in the business of furnishing consumers outside the towns and cities? A. Not in a general way, only where they are required to. * * * Before the city gate rate was put in effect the O. G. & E. had a right to put on consumers within 5 miles of the city limits. When the city gate rate was fixed it was agreed between the two companies that they would have the privilege of taking over any consumers or taking over all lines that the Oklahoma Natural had, within the city limits or any property, and outside the city limits that the Oklahoma Natural had the privilege of taking over all lines, meters or property of any kind that the O. G. & E. had. (C.-M. 75.) Q. Just a moment. As I understand your testimony, then in adjusting yourself, the O. G. & E. and the Oklahoma Natural to the gas order, your order stopped you at the borders of the city and they took over what you had inside and you took over what they had outside? A. Yes, sir. (C.-M. 76.) * * * Q. Was it the intention that the O. G. & E. would continue to serve all those on its distribution system except those beyond the city gates and on your lines? A. They would serve everybody on the inside of the gates because the city gates were supposed to represent the city boundary line. (C.-M. 82.) * * * Q. Inside the city limits the O. G. & E. had the option to take over such of the property of the Oklahoma Nat-

ural located within the city limits as it desired? A. Yes, or we had the right to remove it. (C.-M. 83.) * * * Mr. Bennett: Will you tell the Commission why it was you said awhile ago in your testimony—'I thought at the time when this gate rate was promulgated we had the right to take over and serve Wilson & Company and I think we have the right now'? (C.-M. 85.) A. They are outside the city limits, the gates were supposed to represent the city limits because we tried to use our best business judgment in placing the gates so they would not have to be put back with the growth of the town. Q. And you considered, according to the terms of that arrangement, that Wilson & Company were outside the city limits and their being outside the city gates which were supposed to be coincident with the city limits? A. We never considered anybody at all, just city limits. Q. I am trying to get at why you said 'we have the right to serve them now'—is it because they are outside the city limits and they had theretofore been served by the O. G. & E.? A. Yes. (C.-M. 85.) Mr. Bennett: Q. Do you think the O. G. & E., Mr. Sharp, has the right to take over the line that you have extended from May avenue running along Ash, south along Wilson & Company's plant? A. Not without some arrangement agreeable to us both. (C.-M. 86.) Q. You mean they have not the right to take it over under the agreement you agreed on? A. Not unless the city limits were extended there. (C.-M. 87.) Q. Are there any packing town districts consumers of gas of the O. G & E. within and without the city limits? A. Yes, sir, Morris & Company; Auditorium; Mule Barns, etc., all served off the Exchange avenue line, and they are all similarly situated to Wilson & Co., outside the city limits. One line serves them all."

### Re-Direct Examination:

"Q. Mr. Sharp, as I recall your testimony you said at the time of the promulgation of the gate rate schedule you had the understanding with the O. G. & E. that where they had certain properties outside the city limits that the Oklahoma Natural might take them over and along with the property of course would take over the customers, and would serve the customers who had theretofore been served by the O. G. & E. (C.-M. 67.) Mr. Rainey: I understood his testimony to be it was outside the city gate, not the city limits. A. That is right, the 'city gates' were supposed to be the 'city limits', but the order of the Corporation Commission made the 'city gates', as I explained, the 'city limits', and on account of the city limits extending from time to time we had to use our best judgment in placing the city gates. (C.-M. 68.) Mr. Cochran: And where it would take over such property and with the agreement had with the Commission that those consumers that had theretofore been served by the O. G. & E. would be served

by the Oklahoma Natural? A. Yes, sir. Mr. Cochran: Inside the city limits the O. G. & E. had the option to take over such property of the Oklahoma Natural located within the city limits as it desired? A. Yes, or we had the right to remove it. (C.-M. 83.) * * * Mr. Rainey: The trouble is here sometimes in speaking of this you use the word 'city limits' and sometimes 'city gates.' A. The 'city gates' were supposed to be the 'city limits', but we use the term 'city gates', and whenever we use the term 'city gates', the service from thereon is the O. G. & E." (C.-M. 68.)

The Corporation Commission was confronted with the unprecedented condition of two gas companies, one a producer—the other a distributor, owning property within and without the city limits of Oklahoma City and both supplying gas to consumers within and without the city limits, under the percentage contract.

Prior to the establishment of the gate, both of these defendants owned property within and without the city limits, and both were engaged in supplying consumers with gas within and without the city limits, and, in the instant case, were, under some satisfactory arrangement between themselves, furnishing this plaintiff with gas under the old percentage contract plan.

The order establishing the city gate carried with it the necessity of locating the gate outside the city limits. The gate of necessity would be located as near the city limits as practicable. The sole object in establishing the gate plan was to do away with the impracticable and illegal condition existing under the percentage contract, which we have heretofore discussed.

It will be observed, when the percentage contract was abrogated and the measuring gate was established, it became very apparent to all persons in interest that, under the facts and circumstances as shown by the record, the business relations theretofore existing between these defendants with reference to supplying this plaintiff and other consumers with gas could be no longer continued under the established measuring gate rate plan, and that an adjustment of the former business relations existing between these defendants was imperative.

Under this order city gates were to be established at each of the cities and towns, and it appearing to the Commission that the Oklahoma Natural was the only company engaged in the production and transportation of natural gas from producing gas wells to the city of Oklahoma City and territory adjacent thereto, the order provided that said company should be required to furnish gas to all the distributing companies who were engaged in the business of distributing gas to consumers of gas residing within the city limits, and that said gas should be measured and received at the city gate.

Under the provisions of this order it became necessary for the defendant O. G. & E., a distributing company, to purchase its gas of defendant Oklahoma Natural, a distinctively producing and transporting company, thereby, in effect, classifying these companies as they are known to the law, and thereby making it more practicable for the Commission to exercise its supervisory power over them.

Keeping in mind the history, facts, circumstances, and the law of the case, it must be clearly apparent that the Commission had in mind and so considered the "city limits" as the boundary line within which the O. G. & E. should operate as a distributing company, and without which the Oklahoma Natural should operate as a producing and transporting company. And no better evidence can be suggested than the established fact that soon after the establishment of the measuring gate these defendants did enter into the above agreement and did begin to adjust themselves to the order and did, in several instances, turn over certain properties and consumers belonging to each, to the other.

It is quite apparent to the court, after these defendants entered into this agreement and when they began to adjust themselves to the order complained of, they observed at a glance that if the contract or agreement should be construed to mean the city limits, they had deprived themselves of the remunerative pleasure of supplying this plaintiff with gas, which they mutually enjoyed under the percentage contract.

In Oklahoma G. & E. Co. v. Oklahoma Natural Gas Co., 85 Okla. 25, 205 Pac. 768, this court held:

"Public service corporations have a right to enter into contracts between themselves, but such contracts are subject to the control and supervision of the Corporation Commission, if they are unconscionable, oppressive, and impair the obligation of the public service corporations in the discharge of their public duty to the public."

After a careful and studious consideration of the entire record in this case, we cannot agree with the contention of the defendants that the Commission fixed the city gate as the boundary line within and without which these defendants should operate. Neither do we agree with the contention of

the defendants that the order so made is unreasonable.

This defendant O. G. & E. also contends and assigns as error "that the order of the Commission depriving it of the right to furnish the plaintiff with gas is violative of section 7, art. 2, of the Constitution of the state of Oklahoma, and of the Fourteenth Amendment to the Constitution of the United States," in that said order would operate to deprive this defendant of its property without due process of the law and to deny it the equal protection of the law.

Having heretofore discussed this proposition in the body of the opinion, we here incorporate and adopt what was therein said by the court as being likewise applicable to the contentions of this defendant.

We have examined the authorities cited by these defendants in support of their respective contentions herein, and are of the opinion said decisions are inapplicable and not controlling in this case.

The judgment of the Corporation Commission is affirmed.

MASON, C. J., and RILEY, HEFNER, SWINDALL, and ANDREWS, JJ., concur. HUNT and CLARK, JJ., concur in conclusion. LESTER, V. C. J., absent.